[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on January 20, 1973 in Fairfield, Connecticut. There are no minor children issue of the marriage. This is the second marriage for each of the parties.
The plaintiff is 69 years of age. He was divorced in 1969 and has four children from that marriage. The oldest of these children was 20 years of age at the time of his divorce, and no one of these children have lived with the parties on a full time basis during their marriage. During all of their marriage the plaintiff was employed at Marsh 
McLennan, an insurance brokerage firm in New York City until his retirement four and a half years ago at the age of 64 1/2. He left this employment voluntarily, but on account of physical disability. He has suffered from chronic bronchitis for ten years and also arrhythmia which he has had for twenty years. He has medications for both of these Physical problems and experiences shortness of breath.
The defendant is 56 years of age and has one son from her previous marriage. Her son was nine years of age at the time of the parties' marriage and lived with the parties on a full time basis until he was eighteen. She is employed on a part time basis as a travel agent for an agency called Travel Express in Southport, Connecticut. The parties agreed that if she worked on a full time basis she could earn $20,000 per year. While in her thirties she worked as assistant to the President of Gould's Position, an investment advisory company, and from 1971 to 1975 for Kidder Peabody, formerly Clark Dodge, as a licensed stock broker. During the years 1977-78, she was employed as the Pension Fund Investment Administrator for the pension fund of the City of New York (see plaintiff's exhibit T). In 1978 the parties moved from New York to Connecticut, and at that time, the defendant went to work forThe Partnership Record, a publication reporting on partnerships involved in oil and gas, real estate partnerships and limited partnerships during the time of their flourishing with tax advantages for those with high incomes looking for tax write-offs. This publication terminated when limited partnerships no longer presented tax benefits, and it was then that the defendant went into the travel business.
In 1978 the parties sold the plaintiff's New York apartment and CT Page 9831 built the family home on Long Meadow Road in Fairfield. At that time it was in joint names. The plaintiff realized $90,000 on the sale of his New York apartment and the parties borrowed $60,000 on a mortgage. The mortgage was paid off two or three years ago. The parties value this property at $325,000. It is subject to a home equity line of credit of $55,000, which the plaintiff obtained after the execution of the agreement for repairs to the home and for payments made by him under the agreement, which is the central issue of this litigation and which will be hereinafter discussed more fully.
The marriage of the parties has broken down irretrievably. While the defendant had not decided that this was so until about three weeks ago, it is admitted in the defendant's answer of March 14, 1994. This pleading also sets forth a cross-complaint on behalf of the defendant alleging that the marriage has broken down irretrievably and claiming a legal separation and other relief.
At the time of their marriage, the plaintiff had assets of $250,000 representing inheritances and current savings. His mother died in 1972 leaving a trust with a current principal value of $570,000 (see plaintiff's exhibit S) of which he is the current income beneficiary with powers in the trustees in their discretion to distribute principal. (See plaintiff's exhibit R, Article Fifth and Sixth.) Some principal was distributed to the plaintiff in 1978 for building the house in Fairfield and the purchase of the New York apartment and, eight and ten years ago, for the marriages of his daughters. Under the provisions of his mother's will, the plaintiff had a general power to appoint the principal of the trust upon his death as he might direct by his last will. Such a provision results in the total taxability of the trust in his estate when he dies and an asset that can be considered in determining the division of marital assets.
The plaintiff is also the income beneficiary of a trust under his uncle's will. (See plaintiff's exhibit P.) The assets of this trust are $218,000 (see plaintiff's exhibit Q) and the annual net income is $21,000.
The plaintiff has two IRA accounts totaling $180,000, a pension plan providing annual income of $21,000 and a brokerage account of $54,000 and New York State Bonds of $54,000.
As disclosed in the defendant's financial affidavit, the parties owned real property in Upper St. Regis, New York on a lake in the Adirondack Mountains. This property has been valued anywhere from $325,000 to an amount in excess of $500,000. The property was purchased CT Page 9832 in 1977 at a cost of $10,000 and the camp built in 1978. The small main building and two sleeping cabins were built in 1978. A larger boat house with sleeping quarters over was also built at that time. The defendant, as a child, spent summers in this area and loves this property. This year she is Commodore of the St. Regis Yacht Club.
On November 4, 1993, the parties executed a separation agreement at the offices of Attorneys Payne, Morehouse, Shafer and Harlow in Fairfield. (See plaintiff's exhibit A.) The plaintiff had gone to Attorney W. Bradley Morehouse to draft such an agreement. The parties themselves negotiated the agreement completing rough drafts of financial affidavits prior to the execution of the agreement. The defendant was completely familiar with the plaintiff's assets since she kept the financial records, wrote the checks to pay bills and gathered the tax information for the preparation of their income tax returns. The negotiations between the parties are memorialized at least by the plaintiff by his letters to the defendant dated October 11, October 19 and October 21 (see plaintiff's exhibits K, M and N) and the defendant's note agreeing to receive the lake property and $100,000 plus alimony of "_________ [blank] dollars for __________ [blank] months" (emphasis supplied). (See defendant's exhibit 2.)
The defendant consulted Attorney Beth Rooney concerning the agreement. No evidence was offered regarding Attorney Rooney's representation except that the representation by Attorney Rooney did not continue after the one conference. The plaintiff paid $500 for the defendant's consultation with Attorney Rooney.
Attorney Morehouse testified that he advised the defendant he represented only the plaintiff, that he urged the defendant to seek counsel of her own choosing, that he had no separate discussions with the parties other than his initial discussion with the plaintiff early in October, 1993. He testified further that he knew the defendant paid the bills and kept the checkbook and assumed she was fully aware of finances. He could not remember whether he was present for the signing of the agreement.
Ms. Deborah White, a witness and Notary Public before whom the parties appeared upon signing the agreement, testified. Ms. White was a secretary in Attorney Morehouse's office but not his personal secretary. She testified that Mr. Morehouse was present in the conference room with the parties when she was called in, that the parties acknowledged that the signing was his and her free act and deed, that the atmosphere was social and pleasant and that there was no displeasure while she was present. She also witnessed and took the CT Page 9833 acknowledgement of the parties on the deeds signed that day, one deed quitclaiming the defendant's interest in the Fairfield property and the other deed quitclaiming the plaintiff's interest in the New York property (see plaintiff's exhibits E and F).
The court finds that the agreement was duly executed, that each of the parties was advised of his and her rights with regard to the agreement, that each of the parties was aware of the financial situation of the other, that there was not any intentional withholding of information by either of the parties, that it was anticipated that the defendant would continue working as a travel agent but on a full time basis and realize an income of $20,000 per year, and that the plaintiff would not be returning to work. The court also finds that the defendant is a bright, articulate and intelligent individual and knew the ramifications of the agreement she was signing and had participated in the negotiations between the parties and knew the financial circumstances of the plaintiff, even changing some of the figures on his financial affidavit. The fact that the draft financial affidavits were prepared during the parties' negotiation is demonstrated by the plaintiff's letter to the defendant dated October 11, 1993 (see plaintiff's exhibit K, page 2, fourth paragraph).
The parties commenced the execution of the terms of the agreement. They executed the deeds to the respective real properties and the Fairfield property is now totally in the plaintiff's name and the New York property is now totally in the defendant's name. (See plaintiff's exhibits E and F.) The plaintiff, on November 4, 1993, paid the defendant $13,000 as provided for in Article III of plaintiff's exhibit A. The plaintiff made the second payment of $17,000 on January 1, 1994 as provided for in Article III of plaintiff's exhibit A. He also made the $1500 monthly payments of alimony for a period of ten months until the temporary alimony orders were entered by the court on September 30, 1994.
The agreement provided for payment by the plaintiff of the life insurance premiums on life insurance insuring his life but owned by the defendant. This premium amounts to $1,924 per year. He also was obligated to pay medical insurance on her behalf amounting to $2,184 per year. Effectively, then, the plaintiff was to pay $22,108 per year for three years.
The defendant's assets are reflected in her financial affidavit of July 12, 1995. The General Electric common stock and Chevron common stock were a recent gift from defendant's father. The life insurance cash value of $21,543 is the cash value of the life insurance assigned CT Page 9834 by the plaintiff to the defendant during the marriage and not the result of any transfer pursuant to the terms of the agreement.
While it was not considered by the parties at the time of the agreement, the defendant will inherit substantial sums upon the death of her father. The defendant's mother, Betsey Luscombe Chace, died in April, 1992. Pursuant to the provisions of her will, the defendant has a one-fourth vested remainder interest in the real property at 100 Cherry Lane in Fairfield after the life estate enjoyed by her father. (See plaintiff's exhibit U, Article Fifth, page 4.) The real property at 100 Cherry Lane in Fairfield has been valued at One Million ($1,000,000) Dollars. The defendant's father is 82 years of age. This twenty-five percent remainder interest could be valued based upon life tables, but the parties have not chosen to do so. At the time of the death of defendant's mother, this remainder interest was valued at $177,913 for succession tax purposes. (See plaintiff's exhibit V.)
The defendant is also the beneficiary of a one-sixth interest in the principal of a trust created under Article First (E) of the inter vivos trust of June 21, 1967, Kathleen Sterling Chace, Grantor. The life beneficiary of this trust is, again, the defendant's father. Upon his death, one-sixth of the principal of the trust is to be held in a new trust for the defendant's comfort and maintenance. The current principal value of this trust is $1,545,000. Under this same trust deed the defendant is a remainder beneficiary of one-sixth of the principal of a trust presently held for the life use of her uncle who is 78 years of age. Upon her uncle's death, one-sixth of the principal of the trust is to be held in a new trust for the defendant's comfort and maintenance. The current principal value of this trust is $1,387,000. (See plaintiff's exhibits W, X Y.)
Under a codicil to the last will and testament of the defendant's grandmother, Kathleen Sterling Chace, who died in March, 1977, the defendant receives a one-fourth interest in the principal of a trust of which her father is the life beneficiary. This is a vested remainder interest. The current principal value of this trust is $688,000. (See plaintiff's exhibits Z and X.) The total value of these interests is $912,951.
The question presented for the court to determine is whether the agreement executed by the parties on November 4, 1993 is fair and equitable under all the circumstances. The action by the court in this situation is controlled by the provisions of § 46b-66 of the General Statutes which provides as follows: CT Page 9835
 In any case under this chapter where the parties have submitted to the court an agreement . . . concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness . . . in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. If the court finds the agreement is not fair and equitable, it shall make such orders as to finances . . . as the circumstances require. If the agreement is in writing . . . it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d.
It is the plaintiff's position that the agreement is fair and equitable and that therefore it should become part of the court file and incorporated by reference in the order or decree of the court. It is the defendant's position that the agreement is not fair and equitable and that the court shall make such orders as to alimony and property as the circumstances require.
It is the financial circumstances at the time of trial that must control and not the financial circumstances on November 4, 1993, now nearly two years earlier. In that period of time the parties have become two years older. The defendant has not commenced working full time, and the plaintiff is in ill health and permanently retired.
In the division of property the court finds that the division the parties agreed upon is fair and equitable under all the circumstances. The court does not find, however, that the agreement is fair and equitable on the provisions for periodic alimony.
At the time of the agreement, it was determined by the parties that the defendant had the capacity to earn $20,000 per year as a travel agent. The amount of alimony was determined upon that expectation. The court finds, based upon the defendant's present age of 56 years, her health and her past earnings record, that she does have an earning capacity of $20,000 per year. (See her resume of 1978, plaintiff's CT Page 9836 exhibit T.)
Another important consideration in determining the issue of alimony is the age difference between the parties. The defendant is 56 years of age and the defendant is 69 years of age. The court, also, has considered the health of the plaintiff, the fact that he retired with disability in November, 1991, has a heart condition and chronic asthma, both of which affect his life expectancy and his quality of life. The defendant has the opportunity for the future acquisition of income and tangible assets, whereas the plaintiff no longer has that opportunity.
Having considered all of the factors of § 46b-82, the court shall order alimony in the amount of $2,000 per month to terminate upon the earliest to occur of the following events: the death of either of the parties, the defendant's remarriage, the date upon which the defendant receives distribution under the trust of Kathleen S. Chace, or six years from the date hereof.
In making its determination regarding property distribution, the court has considered all of the factors of § 46b-81 of the General Statutes.
The plaintiff raises the issue of estoppel. This agreement is void as against public policy until approved by the court. Therefore, the issue of estoppel does not apply since the agreement had not yet been approved.
Under the terms of the agreement, more particularly Article III, the plaintiff has paid $30,000 to the defendant by way of lump sum alimony. The plaintiff shall pay $20,000 to the defendant on October 1, 1995 and the remaining $50,000 on January 1, 1996.
Finally, on the issue of counsel fees, the court has considered the provisions of § 46b-62 of the General Statutes and the provisions of § 46b-82. The court orders that each of the parties shall pay his or her own attorney's fees.
As previously noted, the pleadings reflect the parties' agreement that the marriage has broken down irretrievably. The plaintiff admitted an affair lasting a month in 1992. The defendant indicated, however, that this was not the cause of the breakdown. The breakdown of the marriage occurred during the year 1993 without any real fault of either party primarily because of the plaintiff's depression, his ill health and his desire "to have his own space." CT Page 9837
The court has considered all of the criteria of §§ 46b-81 and 46b-82
of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v.Weiman, 188 Conn. 232, 234 (1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
In addition to the foregoing findings, the court finds further as follows:
1. There is the requisite jurisdiction.
2. The allegations of the first count of the plaintiff's amended complaint dated November 8, 1994 have been proved and are true.
3. The allegations of paragraphs one through five and seven of the second count of the plaintiff's amended complaint dated November 8, 1994 have been proved and are true.
4. The allegations of the third count of the amended complaint have been proved and are true except for paragraphs eight and nine which are not therein set forth. This count sets forth a claim of estoppel which does not lie in this action.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The agreement entered into by the parties on November 4, 1993 is found to be fair and equitable as to all its terms and conditions except as to Article III thereof and orders shall enter in accordance with these terms and conditions except as to Article III and its terms and conditions may be incorporated by reference in the decree. CT Page 9838
3. As to Article III, the plaintiff shall pay to the defendant lump sum alimony of $100,000. Of this amount, $30,000 has been paid. The remaining $70,000 shall be paid $20,000 on or before October 1, 1995 and $50,000 on or before January 1, 1996. In addition, the plaintiff shall pay the defendant periodic alimony of $2,000 per month for a period of six years, the first such payment to be made on September 1, 1995. No part of the lump sum alimony shall be taxable to the defendant or deductible by the plaintiff, but the periodic alimony shall be taxable to the defendant and deductible by the plaintiff. The periodic alimony shall be terminable upon the earliest to occur of the following events: the death of either of the parties, the defendant's remarriage, the date upon which the defendant receives distribution under the trust of Kathleen S. Chace, or six years from September 1, 1995.
4. The parties shall each be responsible for his or her own debts except as set forth in Article XI of the Agreement dated November 4, 1993 and each shall indemnify and hold harmless the other party from any claim or demand thereon.
5. Except as otherwise set forth herein or in the agreement of the parties dated November 4, 1993, those assets listed in the plaintiff's financial affidavit shall be his free of any claim or demand by the defendant.
6. Except as otherwise set forth herein or in the agreement of the parties dated November 4, 1993, those assets listed in the defendant's affidavit shall be hers free of any claim or demand by the plaintiff.
7. Except as provided in Article IV, more particularly 4.2, the defendant shall retain the right to convert her existing medical insurance through the plaintiff's group coverage under COBRA. She shall pay the premiums thereon after one year from that conversion, the plaintiff paying the first year in accordance with Article IV of the agreement.
8. The parties shall mutually agree on a division of their tangible personal property. In the event of a disagreement, the matter shall be referred to the Family Relations Office for recommendation and thereafter the court shall retain jurisdiction to resolve any dispute.
9. Each party shall pay his or her own attorney's fees. CT Page 9839
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 9847