[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties were married on April 17, 1986. There are two minor children issue of the marriage, Kimberly, who is 6 years old, and John, who is 4 years old.
The plaintiff, Mrs. Guido, is employed full-time as a computer operator at the Knights of Columbus in New Haven at an annual gross salary of $33,400. She is 34 years of age and has been so employed for 14 years. The defendant, Mr. Guido, is employed by the town of East Haven as a "class A" fireman. He has been so employed for 8 years, and his base annual salary is $37,600. He is 44 years old. At the time of the trial of this matter in the spring and summer of 1995 Mr. Guido was earning approximately $16,000 annually in overtime, besides his base salary. Both parties are high school graduates, and Mrs. Guido has a license to work as a hairdresser.
The family home is located at 40 Anthony Court in East Haven. The court finds that the family home has a fair market value of $200,000, which is the average of the values shown on the parties' respective financial affidavits.[1] The court further finds that the outstanding balance on the first mortgage, as stipulated to by the parties, was $92,608 as of July 1995.
The family home is the principal asset of both parties, and both have pension plans through their respective employers. Each party has waived her and his claim on the other's pension; therefore, the court will enter no orders in this regard. Mrs. Guido also owns a 1/7 interest in a property in Hamden, Connecticut; the total value of the property is shown on her financial affidavit as $70,000. The only other assets of the parties consist of household furnishings, motor vehicles and miscellaneous personal property.
Each of the parties' children has been diagnosed with a serious medical problem. Kimberly has recently been diagnosed with a form of epilepsy which, while it may cause seizures at the present time, can be controlled with medication, and she should "grow out of it" by her teenage years. John, however, has a very serious illness known as William's Syndrome. His physician testified that this is a genetic disorder which will cause serious developmental, intellectual and medical problems throughout his life. Approximately two years ago, at the age of two, John suffered a stroke which resulted in his hospitalization CT Page 12556-G for approximately one week. This incident indicated to the physician a particular vulnerability in John to one of the principal symptoms of William's Syndrome; viz., narrowing of the arteries, but he has made a remarkable recovery since that time. While this illness requires extraordinary medical attention as well as continuous physical and occupational therapy, almost all of the costs have been and will continue to be borne by the parties' medical insurance. Special services are available to John through the public school system as well.
The court has considered all of the criteria of Sections46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account",Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated subsequently in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
While the parties' base annual incomes are close in amount, Mr. Guido's ability to work overtime as a fireman creates a higher earning capacity on his part.[2] As a result, his net weekly income is considerably more than Mrs. Guido's. While Mrs. Guido possesses a hairdresser's license, since she will be the custodial parent of the two minor children, both of whom have serious medical problems, the court would not expect her to supplement her income, at least at this time, by working over and above her full-time employment. Given the limited financial resources available to the parties overall, the court would expect Mr. Guido to maximize his earning capacity.
In addition, the court finds that, while both parties contributed to the breakdown of the marriage, Mr. Guido bears a greater degree of responsibility. His pattern of jealousy throughout the marriage and his volatile temper could only have exacerbated Mrs. Guido's depression and withdrawal from their relationship. Violent outbursts by Mr. Guido in 1992 and 1993 resulted in the issuance of two restraining orders under § 46b-15
of the General Statutes and his arrest on one of those occasions. CT Page 12556-H There were also serious differences between the parties as to sexual matters, and the court accepts Mrs. Guido's testimony as to Mr. Guido's unreasonable demands being the principal source of those problems.
Mr. Guido offered testimony that Mrs. Guido had admitted to an act of adultery during the marriage. She denied the act and the admission. The source of this testimony was a former friend of Mrs. Guido, who had become Mr. Guido's girlfriend and sexual partner after the parties' separation. The court did not consider her testimony reliable.
The parties made approximately equal financial and non-financial contributions to the acquisition and maintenance of the family home. Mr. Guido, therefore, should share in the appreciation in value of the property. The court, however, believes it is desirable for Mrs. Guido and the minor children to remain in the family home at least for the next several years, and, if financially feasible, until the children have reached their majority. In view of that finding, the court finds a greater financial need on the part of Mrs. Guido, as the custodial parent, in order to meet the cost of remaining in the family home. The financial orders herein are intended to fulfill the court's "duty to shape its orders so that the family, especially those who are economically at risk, are given protection." Sweet v. Sweet, 190 Conn. 657, 664 (1983).
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
1. The marriage of the parties is hereby dissolved on grounds of irretrievable breakdown.
2. The parties shall have joint legal custody of their two minor children and the residence of the children shall be with the plaintiff, with rights of reasonable, liberal and flexible visitation in the defendant. The plaintiff shall have final decision-making authority with regard to matters of the children's health, education and welfare and shall keep the defendant promptly and fully informed in these matters. CT Page 12556-I
Within 60 days of the date of dissolution, the plaintiff shall complete the parenting education program and provide documentation thereof to the court and to the defendant.
The parties are referred to the family services office for the Superior Court for the Judicial District of New Haven for mediation as to a visitation schedule. The court retains jurisdiction to resolve any matters regarding visitation which are not agreed upon by the parties through mediation.
3. The defendant shall pay to the plaintiff as child support the sum of $300 weekly by way of an immediate wage execution.
The court finds that the defendant's child support obligation pursuant to the guidelines is $210 weekly, without taking into consideration the unreimbursed work-related day care expenses of the plaintiff. Those unreimbursed work-related day care expenses represent 24.5% of the plaintiff's net weekly income, as indicated on her financial affidavit. Considering the child support guidelines deviation criteria, in particular § 46b-215a-3 (b)(6)(B) for unreimbursed day care costs, the court finds that application of the guidelines would be inappropriate and orders an upward deviation in the guidelines by $90 in view of the large share of the plaintiff's net weekly income which is consumed by the unreimbursed day care costs.
4. The defendant shall pay the plaintiff $1 per year as alimony. This order is intended to give effect to the defendant's continuing duty to support the plaintiff, especially while she is primarily responsible for the care and custody of the minor children, and it shall terminate upon the death of either party, the remarriage or cohabitation of the plaintiff or the younger child's attaining the age of 18, whichever event comes first.
5. The defendant shall convey by quitclaim deed to the plaintiff within 30 days of the date of dissolution his interest in the family home located at 40 Anthony Court, East Haven, Connecticut. The plaintiff shall simultaneously execute a promissory note secured by a mortgage deed on the property in favor of the defendant in the face amount of $42,957, without interest. The face amount of the note represents 40% of the current equity in the family home, given the court's findings as CT Page 12556-J to its fair market value and current mortgage amounts.
The note shall be due and payable in full upon the happening of the first of the following events: (a) the sale of the residence, (b) the refinancing of the existing mortgage, (c) the commencement of a foreclosure action by anyone, (d) the plaintiff's or both children's vacating of the premises, or (e) the younger child's reaching the age of 18 years.
After the defendant's execution of the quitclaim deed, the plaintiff shall be entirely responsible for the payment of the mortgage, taxes and insurance on the family home and shall indemnify and hold the defendant harmless therefor.
6. Both parties are ordered to maintain medical and dental insurance as available through their respective employers for the benefit of their minor children, and each party shall be responsible for 1/2 of any unreimbursed or uninsured medical, dental, orthodontic, prescription, eye care and/or mental health expenses incurred for the benefit of the minor children.
7. Both parties are ordered to maintain their current life insurance policies or substitute policies of equal face value, naming the minor children as primary irrevocable beneficiaries until the youngest child attains the age of 18 years.
8. The plaintiff shall retain ownership of the 1978 Corvette Sting Ray, as well as all of the furniture and furnishings in the family home except for certain tools and sports equipment desired by the defendant. In the event the parties are unable to agree on the return of the tools and sports equipment desired by the defendant, the matter is referred to the family services office in accordance withValenti v. Valenti, 180 Conn. 528, 533 (1980), for investigation, conciliation and report. The court retains jurisdiction to resolve any issues regarding personal property that the parties do not resolve between themselves.
9. Each party shall pay her and his own counsel fees.
SHORTALL, J.