PATRICIA K. KANE *v.* JAMES D. PARRY
(8034)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued September 28, 1990—decision released March 26, 1991

*Philip French,* with whom, on the brief, was *Patricia Kane,* for the appellant (plaintiff).

*Sperry A. DeCew,* for the appellee (defendant).

FOTI, J. The plaintiff appeals from the judgment of the trial court in an action for the dissolution of a marriage. She challenges (1) the trial court's decision to proceed with the trial despite the defendant's failure to produce all of the discovery previously ordered by the court, and the trial court's failure to take remedial measures including sanctions for the defendant's noncompliance with discovery orders, (2) various aspects of the trial court's financial awards, and (3) the trial court's order compelling her to file joint tax returns with the defendant.

The trial court found the following facts. The plaintiff and the defendant were married on June 12, 1964. This dissolution action was filed in 1987. During the marriage, the parties enjoyed economic prosperity. The defendant earned salaries of up to $300,000 per year as a copywriter, and the plaintiff embarked on a promising legal career. The plaintiff also managed the family finances. She had purchased several properties that the couple held as investments. Despite this apparent success, there were a number of problems that profoundly affected the couple's fortunes. At the time of trial, the parties had filed only one federal income tax return.[1]

---

[1] The sole return was filed for 1986. Since the trial, the parties have filed some federal income tax returns. Despite direct questioning at oral argument by this court, the attorneys were unable to state exactly what was filed for each year, but it is clear that the defendant has filed several joint returns that have not been signed by the plaintiff, and that the plaintiff has filed several separate returns as well.

In 1984, the plaintiff decided to give up her law practice to devote her time to her younger children.[2] In 1985, the defendant started his own business. By the end of 1987, that business had collapsed with debts totaling $600,000.

In 1986, the couple separated contemplating dissolution, and the plaintiff purchased a house near the family home at the defendant's request, so that the defendant could live near the two minor children. The plaintiff filed her complaint on April 8, 1987, and, after a failed attempt at settlement, the cooperation between the parties deteriorated. The defendant decided to reduce the monthly support payments he had been making to the plaintiff. The plaintiff then sought and was granted temporary alimony and child support. From this point, the financial situation of the parties worsened. The primary reasons for this decline were the change in the defendant's job situation, the expenses of maintaining two households, and an attempt by the parties to maintain their former lifestyle. The parties also engaged in almost two years of pretrial skirmishing. At the time of dissolution, the parties' assets consisted almost exclusively of five parcels of real property and each of these was heavily encumbered with debt. The parties also had unsecured debts totalling $200,000.

Upon a finding that the marriage had irretrievably broken down, the trial court dissolved the marriage, awarded custody of the minor children to the plaintiff, divided the assets and liabilities and awarded child support. The dissolution and child custody are not in issue in this appeal.

---

[2] There were four children that were issue of this marriage: Tanya, Michael, David and Stephen. Tanya is an adult, and Michael is deceased. Only David and Stephen were subject to the custody award in this proceeding.

## I

The plaintiff's first claim is that the trial court did not properly address her dissatisfaction with the defendant's compliance with pretrial discovery orders. She alleges on appeal that the trial court improperly forced her to proceed with the trial without full financial disclosure and failed to take certain remedial measures.[3] These issues are raised on appeal, but were not properly preserved at trial.

An exception to a ruling must be taken to make it a ground for appeal. *Delfino* v. *Warners Motor Express,* 142 Conn. 301, 308, 114 A.2d 205 (1955). "The requirement that the claim be raised 'distinctly' means that it must be 'so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked.' (Emphasis added.) *Woodruff* v. *Butler,* 75 Conn. 679, 682, 55 A. 167 (1903)." *State* v. *Carter,* 198 Conn. 386, 396, 503 A.2d 576 (1986); *State* v. *Utz,* 201 Conn. 190, 207, 513 A.2d 1191 (1986); see *In re Christopher G.,* 20 Conn. App. 101, 107, 564 A.2d 619 (1989), cert. denied, 213 Conn. 814, 569 A.2d 549 (1990).

The plaintiff cites various points in the transcript where her counsel represented to the trial court that the defendant's compliance with discovery orders was incomplete, and at each of these the court either acted

---

[3] The plaintiff claims that the trial court should have (1) limited the defendant's testimony to his discovery compliance, (2) drawn adverse inferences from the noncompliance, and (3) assessed sanctions to cover the cost of the plaintiff's pretrial discovery motions.

Although the court did not address this issue in its memorandum of decision, the court stated in its modification of judgment that "[a]t the trial, claims were made that all assets were not disclosed, and that some known assets were not on the financial affidavits. The memorandum of decision should have covered this subject. The court finds that the plaintiff had adequate time for discovery, adequate disclosure from the defendant and that the defendant's assets were accounted for and he did not conceal income."

to cure the problem, or assured the plaintiff that the court would act if it became necessary. The plaintiff never communicated a claim to the trial court that its orders, aimed at curing the problem of inadequate compliance, were insufficient, improper or that she excepted to them. Because the plaintiff led the trial court to believe that the problems regarding discovery were cured to her satisfaction, she cannot raise them now on appeal.

"The purpose of requiring an attorney to except is not merely formal. An exception serves the important function of alerting the trial court to error while there is time to correct it without ordering a retrial." *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984); *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 568–69, 525 A.2d 954 (1987); *State* v. *Anderson,* 6 Conn. App. 15, 18, 502 A.2d 446 (1986).

Because we do not review unpreserved claims unless there is plain error; Practice Book § 4185; or an issue of constitutional magnitude; *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); we affirm the trial court's decision ordering the matter to proceed to trial.

Further, even if we assume arguendo that the plaintiff had properly preserved the issue of failure to disclose in a timely manner, she never sought a continuance. A continuance is ordinarily the proper method for dealing with a claim that there has been a failure to disclose in a timely manner. *Rullo* v. *General Motors Corporation,* 208 Conn. 74, 77–79, 543 A.2d 279 (1988). A continuance serves to minimize the possibly prejudicial effect of inadequate compliance or nondisclosure and, absent a request for a continuance by the party claiming to have been prejudiced by the failure, appellate review is not warranted. *Kevin Roche-John Dinkeloo & Associates* v. *New Haven,* 205 Conn. 741, 748,

535 A.2d 1287 (1988); *Giardini* v. *Supermarkets General,* 24 Conn. App. 9, 13, 585 A.2d 110 (1991).

The plaintiff further argues that the court should have assessed sanctions, in the form of attorney's fees, against the defendant for wilful noncompliance with discovery orders. We do not address the merits of this claim because it also is unpreserved.

The record reveals that a committee was appointed on February 6, 1989, by the court, *Landau, J.,* to review and determine discovery compliance. After scheduling a meeting of all parties, the special master filed his report and findings, recommending that certain sanctions be imposed upon the defendant because of his lack of compliance and his dilatory practices. The defendant filed an objection to the committee report, and the court, *Hauser, J.,* referred any sanctions recommended by the committee to the trial judge.

Neither the plaintiff's brief nor her reply brief contains a single transcript reference that shows that she requested that sanctions be imposed, that the court act on the committee report and recommendations, or that a hearing be scheduled for purposes of determining whether sanctions should be imposed. The trial commenced on April 4, 1989, and proceeded for four additional days, concluding on April 11, 1988. We have reviewed the record and find no such request before the trial judge, prior to, during or after the trial. While the trial judge, at the time of trial, may have determined that adequate disclosure had taken place at that time, he was never requested to act on the committee report that dealt with findings of pretrial noncompliance.

## II

The plaintiff makes a series of attacks on the financial orders of the trial court.[4] The financial orders, other

[4] In addition to her challenge to the granting of time limited alimony, the plaintiff alleges that the court improperly (1) evaluated the defendant's

than the limited alimony, were within the discretion of the trial court and need not be separately discussed.

The plaintiff argues that the trial court's award, which is nonmodifiable as to term and amounts to $1500 per month for sixty months, is inconsistent with the legislative scheme of General Statutes § 46b-82.[5] We disagree.

General Statutes § 46b-82 sets out a number of criteria for the court to consider in exercising its discretion in awarding alimony. These include the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, and the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties. General Statutes § 46b-82. The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. *Valante* v. *Valante,* 180 Conn. 528, 530–31, 429

employment status, (2) based its award on gross, rather than net income, (3) based financial orders on the defendant's projected earnings rather than his projected earning capacity, (4) failed to consider the defendant's "negative contribution" to the value of their estates, (5) failed to apply the child support guidelines and (6) imposed indeterminant tax liability on the plaintiff. We have reviewed these claims and find that they are without merit.

[5] General Statutes § 46b-82 provides: "ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

A.2d 964 (1980). "As long as the trial court considers all of these statutory criteria, it may exercise broad discretion in awarding alimony. *Carpenter* v. *Carpenter,* 188 Conn. 736, 740-41, 453 A.2d 1151 (1982) . . . ." (Citation omitted.) *Roach* v. *Roach,* 20 Conn. App. 500, 505, 568 A.2d 1037 (1990).

"Our standard of review in domestic relations cases is a very narrow one. We will not reverse a trial court's rulings with regard to . . . financial orders unless the court incorrectly applied the law or could not reasonably have concluded as it did." *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 302, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). "While the trial court need not make an express finding on each of the mandatory statutory criteria; *Leo* v. *Leo,* 197 Conn. 1, 5, 495 A.2d 704 (1985); *Louney* v. *Louney,* 13 Conn. App. 270, 273, 535 A.2d 1318 (1988); the record must contain some indication as to the reasoning of the court in making an alimony award of limited duration. *Makarian* v. *Makarian,* 2 Conn. App. 14, 16, 475 A.2d 337 (1984)." *Roach* v. *Roach,* supra.

The trial court expressly considered the statutory factors and discussed the employability, the vocational skills, and the amount and sources of income in its memorandum of decision. The record shows that the plaintiff has successfully reopened her law office. The defendant, on the other hand, has suffered professional setbacks, and is no longer earning as much as he had in previous years. The court estimated that the plaintiff's income for 1989 would be $30,000 to $100,000 and that the defendant's would be between $100,000 and $150,000. Although the future earnings of the parties are difficult to predict, the earning capacity of each is one method for predicting future earnings. We cannot say that the court's predictions were inaccurate. The plaintiff should continue to enjoy success as an attorney in the upcoming years. In addition, the plaintiff has

shown herself to be a competent investor and manager of money. Moreover, in her amended claims for relief she asked for only seven years of alimony.

On the basis of this record, we cannot find that the trial court abused its discretion. We affirm the trial court's decision regarding time limited alimony, as well as the balance of the court's financial orders.

### III

Finally, the plaintiff alleges that the trial court's order to file joint federal personal income tax returns is improper because the trial court lacks the authority to deprive her of the federal right to file a separate return. We agree with the plaintiff as to the returns filed for 1984, 1985, 1987 and 1988, but we affirm the order as to the balance of the parties' outstanding returns.

A trial court has the authority to order a party to file a joint federal personal income tax return if there was a prior agreement between the parties to do so. See *Wolk* v. *Wolk,* 191 Conn. 328, 330, 464 A.2d 780 (1983). In this case, the record shows an agreement by the parties to file joint federal income tax returns for the years 1978 to 1983, inclusive.[6] Therefore, the trial

---

[6] The following took place at trial.

"[Counsel for the defendant]: 1978, 1979, 1980, 1981, 1982 and maybe 1983, for the first group. Those returns you have seen. Are you willing to make a commitment to file those as prepared? I'm not asking that you be responsible for any interests or penalties.

"[The plaintiff]: I have been in the past willing to rely on those returns.

"Q. And are you willing to tell the court that you will continue to be—as long as you're not responsible for any interest or penalties?

"A. Would I be indemnified?

"Q. Yes. . . .

"Q. I don't know what indemnified means. The judge will make some determination of who's paying it and out of what, if anything, and so on. Assuming the judge takes care of that, as part of his decision, then you are willing to sign?

court's order to file joint returns for these years is proper. The record, however, does not show an agreement to file joint returns for 1984, 1985, 1987 and 1988. In the absence of such an agreement, the trial court cannot order the plaintiff to file joint federal personal income tax returns.

The judgment is reversed as to the order requiring the plaintiff to file joint federal income tax returns for the years after 1983, and the case is remanded with direction to render judgment as on file in all other respects.

In this opinion the other judges concurred.

"[Counsel for the defendant]: Maybe I should have done that 20 minutes ago. . . . If the judge, in his memorandum of decision, attempts to take care of the problem of any interest, penalties, and taxes due on these, you're willing to go with what the judge decides with regards to that, and sign a joint tax return?

