[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court as a limited contested dissolution of marriage. Prior to the commencement of the case the parties stipulated on the record and in a written agreement as to the custody and visitation. Said agreement dated November 19, 1992 was made an order of the court. This memorandum of decision will not address either custody or visitation.
The parties were married on July 11, 1987 in Stamford, CT Page 11751 Connecticut. The wife's maiden name was Squires. The parties have resided in the state of Connecticut for at least a year prior to the date of the complaint. Neither of the parties is receiving aid from the state of Connecticut or any municipal subdivision thereof. There is one minor child, Natasha Rebecca Nau, born December 24, 1987. The parties both still reside in Stamford. The court finds that the marriage has broken down irretrievably.
The lengthy trial in this case was caused primarily in this judge's opinion by the absence of tax returns during the course of the marriage. The parties filed no tax return for 1987, 1988, 1989, 1990 and 1991. This court spent a great deal of time listening to testimony concerning each of the parties perceptions of what the earnings were during the course of the marriage. It is abundantly clear to this court that the wife's testimony concerning the husband's earnings and other income was at best a guess and this court found her lengthy testimony to be of little help. The wife's testimony pointed out the areas of the husband's earnings which included his contracting business, his snow plowing business, his Christmas tree business, his wood sales business and his estate management business. When it came to the specifics she was unable to assist this court in making any definitive determination as to exact earnings.
An example of her testimony in this area was that on her first day of testimony concerning the Christmas tree business of 1990 she testified it was $8000 to $10,000. Then on November 20th she testified that the net for the Christmas tree business for 1990 was $16,000 instead of the $8000 to $10,000. On November 27th she testified on further reflection she did not know the exact amount of the Christmas tree business for 1990. She knew that "ma and pa operations had sprung up and taken away from profits". She believed in 1990 he lost money. This court therefore was confronted on that issue alone with three different sets of testimony from the wife.
The husband testified on direct examination that for 1990 as it related to the Christmas tree business he lost $17,000 approximately give or take what he described as a margin of error of somewhere between 5 and 10%.
His testimony was during 1987 he had net taxable earnings from all of his businesses in the range of $28,000 to $32,000. He indicated a 5 to 10% margin of error. In 1988 he testified that his net taxable earnings from all of his businesses was between CT Page 11752 $28,000 and $32,000. He indicated again a 5 to 10% margin of error. In 1989, he testified he had net taxable earnings from all of his businesses in the approximate sum of $35,000. He indicated a 5 to 10% margin of error. In 1990 he testified he earned approximately $35,000 from all of his businesses. And again a 5 to 10% margin of error. He testified that during 1991 he had net extra earnings of about $1600 from an odd job or two. That included being paid $500 for working on the Christmas tree lot.
His estimate for 1992 is that he will earn an additional $1600 give or take 5% from some wood sales, some leaf blowing, some gutter work, some basement pumping, some snow plowing and the like. His projected net income for 1992 as a firefighter is $32,000. If we add in the $1600 he would make $33,900 net.
His W2 for 1991 indicated that he made gross wages of $47,742.58. Adding in the $1600 additional he made approximately $49,342.58 for the year of 1991. He has not filed that tax return of course. It is clear from his testimony that he earned that extra money as a firefighter because of the illness of one of the firefighters which necessitated additional overtime for him. That firefighter is back to work and therefore the overtime is not there at this point.
The husband is age 37 and in very good health. He lives in a small house owned by his grandparents. He is supposed to be paying $400 per month rent but has not kept that rent current. He is a high school graduate and during most of the marriage he was in contracting and other businesses. In January 1991 he became a full time firefighter working for the Long Ridge Fire Company, Inc.
The husband stated that he made approximately $35,000 in 1991 with a 5 or 10% margin of error. This court asked him specifically what he made and how he made it within the various categories. He testified that he made about $1500 in snow plowing. He testified that he made about $28,000 as a contractor. He testified that he made about $600 in fire wood. All of which totaled $30,100 which amount is below even the 10% margin of error. To some extent this court finds that he is also at best estimating and at worst guessing what he has earned.
The wife as shown on exhibit 4 received a Bachelor of Arts in English from the University of South Florida in 1981. She then went to Oxford University in the summer of 1981. Thereafter she took courses towards a Masters program at Columbia University CT Page 11753 School of Social Work. Her resume indicates that she has held responsible jobs during her work experience. It is clear that shortly after the birth of the child she stopped working.
The testimony of the expert witness Ms. Margaret Tracey was that she was not able to find her a job based on her training and experience. The wife is presently working as a waitress in David's Restaurant which is in close proximity to the courthouse. She testified as to her current earnings at David's, what the tips were she said that a realistic expectation as she was told and her earnings indicate, is approximately $300 per week. This includes tips plus her hourly rate.
The parties differ as to the causes of the breakdown of the marriage. It is clear that during the course of the marriage the husband had a sexual relationship with someone other than his wife. The wife's testimony is that the marriage broke down irretrievably in her opinion when he cut off all of her financial support that she received in January of 1991. The husband testified that the wife's testimony concerning the lack of sexual activity during the marriage was accurate. He testified that the last time that the parties had sexual relations was on Labor Day of 1989. He testified that he did not start a relationship with the other woman until the fall of 1990 when he had sex with her. The court does not allocate fault to either of the parties for the breakdown of the marriage.
The court has listened to the witnesses and reviewed all of the exhibits in the case. The court has reviewed the financial affidavits of the parties, has reviewed the claims for relief of both of the parties and the arguments with counsel. In addition, the court has taken into consideration all of the statutory criteria set forth in 46b-81 the Assignment of property and transfer of title statute, 46b-82 the alimony statute and 46b-84
the child support statute and the child support guidelines and46b-62 the attorney's fees statute. Accordingly the court orders and finds as follows:
1. The court finds that it has jurisdiction
2. The court finds that the marriage has broken down irretrievably and the marriage is dissolved.
3. The stipulation re: custody and visitation dated November 19, 1992 on file in the court file is made an order of the CT Page 11754 court.
4. The court finds that both of the parties agree in the original claim for relief, the wife's dated November 18, 1992 and the husband's dated November 18, 1992 that the child support guidelines provide for child support of $167 per week. The court orders child support to be paid in the sum of $167 per week and finds it that it meets the guidelines. A contingent wage garnishment may issue to secure such payments. Such payments to continue until the minor child has reached the age of 18 years unless such child shall sooner die, become emancipated or cease to reside primarily with the wife.
5. The husband shall pay for two weeks of camp for the child in the summer, and make a contribution to the child's preschool by continuing to make his current contribution in the sum of approximately $50 per week as shown on his financial affidavit. The court deviates from the guidelines to order this on the basis of extraordinary education expenses and the best interests of the child.
6. The husband shall pay to the wife as alimony the sum of $20 per week. The court does not make this amount durational. It is to be paid to the wife as long as she is alive, unmarried, and not cohabiting with someone under the cohabitation statute. This court has not made this amount durational since it is found that there is no proof establishing when this alimony should terminate if at all based on her ability to earn or to seek better employment. This court is aware that our law provides that if a material or substantial change in circumstances of either party occurs either party may petition the court for modification of payment. Accordingly the court leaves the parties to their appropriate remedies.
7. The court orders the husband to pay to the wife a lump sum property settlement of $5000 to be paid within one year. of the date of this decree.
8. That the wife shall be given exclusive possession and title of her fur coat, furniture, and personal effects located at the marital home. She shall be granted access on reasonable notice to enter the premises to remove those items.
9. All of the personal property of the husband in his possession shall remain his sole and exclusive property. CT Page 11755
10. The husband is ordered to maintain the health and dental insurance plans for the benefit of the minor child as they are currently available to him. The provisions of 46b-84c shall be applicable to this order.
11. The husband shall fully cooperate with the wife in order to enable her to exercise whatever right she may have under COBRA or other rules or regulations. The provisions of 38a-537
shall be applicable.
12. The husband shall maintain life insurance on his life in the sum of $50,000 said amount shall be payable to the wife as long as he is paying alimony. On the termination of the alimony he shall carry said insurance until the child reaches the age of eighteen for the benefit of the child.
13. Each party shall be responsible for their own attorneys' fees.
14. The debts of the husband as shown on his financial affidavit dated November 19, 1992 shall be his sole and exclusive debts and he shall hold the wife harmless therefrom. The debts of the wife as shown on her financial affidavit dated November 18, 1992 shall be her sole and exclusive debt.
15. All other claims for relief not expressly addressed herein have been rejected by the court.
16. Each of the parties shall share equally the unreimbursed medical and dental expenses of the daughter.
17. The court has expressly not addressed the income tax problems since the court has been invited by the parties to solve that and rejects that offer. The court finds that it would deprive the wife of her federal right to file a separate tax return if this court were to order joint tax returns be filed. The case of Kane v. Parry, 24 Conn. App. 307 at pages 315-16 seems to indicate that the court only has the authority where the parties agree. The court finds no such agreement. The court would hope that the parties would work for their mutual benefit in filing tax returns that produce the maximum amount of return to them and that they work out thereafter which party should receive what part of any overpayment or the like. This court finds that the federal income tax law has sufficient provisions in it to protect the rights of CT Page 11756 the parties.
18. After reading the briefs of the husband and wife the court draws no unfavorable inference to either of the parties for their failure to file tax returns as hereinbefore stated.
KARAZIN, J.