[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties were married on March 5, 1971, and no minor children have been born issue of the marriage.
Both parties are in their mid-sixties and living on very limited social security and pension income. The defendant, Mr. Fox, is a retired engineer and a few years ago started a private consulting business in environmental matters with another individual. To date that business has generated no appreciable income for him, and it is uncertain whether it ever will. The plaintiff, Mrs. Fox, has experienced significant health problems CT Page 12481-AA in the last few years which, along with her very limited employment experience, will make it difficult for her to obtain employment which would produce sufficient income for her to maintain her present standard of living. Mrs. Fox testified that in order to maintain her present standard of living in the former family home she would need a weekly income of at least $200.
When the parties married, Mrs. Fox owned the property at 39 Bayberry Lane in Branford which became the family home. Throughout the marriage, since Mr. Fox was almost entirely responsible for the financial support of the family, the increase in the equity of the property was due to the application of his earnings to payment of the principal and interest payments on the mortgage, which was fully paid off in 1993. Mrs. Fox was responsible for the upkeep of the house throughout this period. Therefore, the court finds that the parties made roughly equal economic and non-economic contributions to the current value of the property, and the court's orders will reflect that finding.
There was considerable discrepancy at trial in the evidence offered as to the fair market value of the home. Mrs. Fox's witness, an experienced appraiser, valued the house at $166,750, while Mr. Fox's witness, an experienced broker in the Branford CT Page 12481-BB area, valued the house at $226,300. Its assessed value is $178,000, which Mrs. Fox's appraiser testified was considerably in excess of its actual value.
Mrs. Fox expressed a very strong preference for remaining in the house, to the extent that she was willing to waive any alimony in return for one hundred percent of the house. The court finds, however, that such a disposition of the house would be inequitable to Mr. Fox and would likely not provide Mrs. Fox with the income security which her circumstances require. The court's orders will allow Mrs. Fox an opportunity to own the home outright by purchasing Mr. Fox's equitable share at the market value established by her appraiser. Otherwise, the house will be sold and the proceeds shared equally. Therefore, it is unnecessary for the court to make a finding as to the fair market value of the home.
Beside her interest in the former family home, Mrs. Fox recently received an inheritance valued at approximately $46,000. Mr. Fox's other substantial asset is his pension from the Aerojet General Company, his former employer, which was valued at slightly over $19,000.
The court has considered all of the criteria of Sections46b-62, 46b-81 and 46b-82 of the General Statutes, together CT Page 12481-CC with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherrv. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated subsequently in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
The parties both testified to a most unhappy marriage, characterized by an almost complete lack of intimacy from a very early date in their married life together. Although Mrs. Fox claimed that her health had been damaged by the stress inherent in such a lengthy relationship, no medical evidence was introduced to support this claim, and Mr. Fox cited other possible causes for Mrs. Fox's medical problems. The court is unable to assign a greater degree of responsibility for the breakdown of the marriage to one party or the other and, therefore, its orders will not reflect any such difference. CT Page 12481-DD
The greatest need of the parties is for sufficient and reliable income to meet their present and predictable needs. Mr. Fox's current social security income exceeds Mrs. Fox's by $142. The court believes that Mr. Fox should pay Mrs. Fox by way of alimony a sufficient amount weekly to equalize their current benefits, and that that payment should be secured by life insurance, with Mrs. Fox as beneficiary thereof.[1]
As indicated above, the court will not accede to Mrs. Fox's wish that she be given the house outright and will recognize an equitable interest in the house on the part of Mr. Fox. While Mrs. Fox does not wish to vacate her home of the past 27 years, it should be noted that Mr. Fox recently was forced to vacate by the court's granting of Mrs. Fox's motion for exclusive possession of the premises, and he had resided in the same premises for the past 24 years.
A significant imponderable in the parties' situation is the potential earnings from Mr. Fox's environmental consulting business. No evidence was introduced as to projected income from that business; therefore, the court cannot make specific provision for an increase in Mrs. Fox's income from a reasonable equitable share in any such future income. The court wishes to note specifically, however, that it considers Mrs. Fox to have CT Page 12481-EE an equitable interest in the future income derived from that business so that an improvement in Mr. Fox's economic situation as a result of the business' success could constitute a substantial change of circumstances and a basis for future modification of these orders.
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true and that the marriage has broken down irretrievably. Based on those findings and the court's consideration of the testimony and exhibits introduced at trial, its observations of the witnesses and assessment of their credibility, the court enters the following orders:
1. The marriage of the parties is hereby dissolved upon grounds of irretrievable breakdown.
2. The defendant shall pay to the plaintiff as alimony the sum of $70 weekly. This obligation shall terminate upon the death of either party.
3. Pursuant to § 46b-81(a) of the General Statutes, the court transfers 50% of the plaintiff's ownership interest in the property at 39 Bayberry Lane, Branford, to the defendant so that the parties shall own the premises as tenants in common after CT Page 12481-FF the date of dissolution, see § 47-14g, C.G.S., with 50% of the ownership in the plaintiff and 50% in the defendant.
Within 60 days of the date of dissolution the plaintiff may buy out the defendant's share in the former family home by a payment in the amount of $82,500, which represents approximately one-half of the fair market value assigned to the property by the plaintiff's appraiser. If the plaintiff shall make satisfactory arrangements within that period, by refinancing or otherwise, for payment to the defendant in the amount of $82,500, the defendant shall execute a quitclaim deed of his interest in the property to the plaintiff in return for that payment.
If the plaintiff is not able to make satisfactory arrangements for this purchase within 60 days, the property shall immediately be listed for sale with Ann Devlin, a licensed real estate broker in the Town of Branford, at a price determined by Mrs. Devlin. The plaintiff shall remain in possession of the premises until the house is sold, and she shall cooperate in every way in a good faith effort to sell the property if she is not able to make arrangements to purchase the defendant's share. She shall also be responsible for keeping the property insured for fire and liability and shall also keep the real estate taxes current, and she shall indemnify and hold CT Page 12481-GG the defendant harmless for these expenses.
When the property is sold, the customary closing costs are to be paid, and the balance of the sale proceeds are to be divided equally between the plaintiff and the defendant.
4. The defendant shall maintain in fully paid status the Equitable life insurance policy shown on his financial affidavit of August 31, 1995, and he shall designate the plaintiff as the primary irrevocable beneficiary of that policy until her death. The defendant shall maintain his ownership interest in the cash value of that policy but shall take no action which would in any way diminish or encumber the plaintiff's ability to recover the full face amount of the policy in the event of his death.
5. The plaintiff shall retain ownership of the contents of the marital residence with the exception of the items therein which the parties mutually agree shall become the property of the defendant. In the event the parties are unable to agree on the defendant's share of the furniture and furnishings of the marital property, the matter is refereed to the Family Services Office in accordance with Valenti v. Valenti, 180 Conn. 528, 533
(1980), for investigation, conciliation and report. The court jurisdiction to resolve any issues regarding personal property that the parties do not resolve between themselves. CT Page 12481-HH
6. The plaintiff shall retain her entire interest in her recent inheritance, and the defendant shall retain his entire interest in his Aerojet pension.
7. Each party shall be responsible for payment of her or his counsel fees.
8. Unless otherwise specifically affected by these orders, the parties shall retain their entire interest in all of their assets shown on their financial affidavits and shall be responsible for all liabilities shown on their financial affidavits and shall hold each other harmless therefrom.
9. By May 15 of each year the defendant shall provide to the plaintiff a copy of his federal and state income tax returns for the preceding year.
SHORTALL, J.