[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties were married on September 27, 1975, and three children were born issue of the marriage, one of whom had reached her majority at the time of the hearing.
The plaintiff, Mr. Rowland, is 41 years of age and, since 1985 or 1986, has been self-employed as a home improvement contractor. At the time of the hearing and since March 1994 he had been living in the family home with the parties' 12 year old daughter.[1]
Although Mr. Rowland's financial affidavit reported a gross weekly wage of $586 and net weekly wage of $478, the court did not find his affidavit or his testimony concerning his financial circumstances reliable because of the prevalence of cash transactions in his business, conflicting accounts he gave as to the sources of funds to pay expenses and his claim of the self-incrimination privilege in response to questions concerning the relationship between his earnings and his tax returns. The court does find that Mr. Rowland's business grossed $83,000 in 1994, and from these proceeds he paid both personal and business expenses.
The defendant, Mrs. Rowland, is 39 years of age and suffering from multiple severe psychiatric illnesses. At the time of the hearing she was unemployed and unable to work because of her condition. She was participating in the day program at the Waterbury Hospital every morning, and her only income is from Social Security disability payments and weekly alimony paid by Mr. Rowland. CT Page 513
When the parties married 20 years ago, both were working, and Mrs. Rowland was also taking care of the family household. She ceased working in 1977 when the parties' first child was born and remained at home, taking care of the house and children, until 1985 when she returned to work part-time at the post office, working a 30-hour week.
According to the testimony of Mr. Rowland, the parties' relationship began going downhill in about 1987 when the symptoms of Mrs. Rowland's illnesses began to manifest themselves. Because of her condition, the principal burden of caring for the home and children fell on Mr. Rowland, and he persevered in that role for several years. In particular, Mrs. Rowland was hospitalized on many occasions and for prolonged periods. During those times the entire burden of running the household as well as caring for the parties' three children fell on Mr. Rowland.
The parties separated in March of 1994 when Mrs. Rowland learned of an extramarital affair on the part of Mr. Rowland and made suicidal statements and homicidal threats toward her family.
The principal issue in this case involves the disposition of the former family home. In 1987 Mr. Rowland's mother gave a parcel of land to him as an advance on his inheritance, according to Mr. Rowland,[2] and on that land the family home was constructed. A $90,000 construction mortgage was entered into by the parties; at the time of trial the balance of the mortgage was stipulated to be $83,000. Payments on the mortgage are current. It was also stipulated at trial that the fair market value of the family home is $220,000. The land and the home are owned jointly by the parties.
Although the former family home was built on land given to Mr. Rowland by his mother, it became part of the marital estate, and the court perceives no reason why the defendant should not share in the appreciation in its value. She contributed as best she could, given her serious illness, to the support of the household until 1993 when she was unable to continue working. She has an urgent and continuing need for income and no earning capacity due entirely to her illness. The plaintiff, on the other hand, is in good health and self-supporting. His actions contributed to the breakdown of the marriage and, in particular, to the final separation of the defendant from the family CT Page 514 household in March of 1994. Considering these facts, the court will enter orders regarding the former family home which are intended to provide the defendant with her fair share of its appreciation in value, and which will enable her to provide income for herself for some time into the future.
Mrs. Rowland's severe illness and its effect on her ability to function in the family must be assigned as the principal cause of the breakdown of this marriage. Both parties testified to an inability to communicate effectively even before that time, and Mr. Rowland's inability or unwillingness to support Mrs. Rowland through her illness also played a role. In addition, his extramarital affair and Mrs. Rowland's reaction to it were the "last straws". Mrs. Rowland testified that Mr. Rowland attended only one counseling session with her, and Mr. Rowland, himself, could only be sure that he had gone to a couple of such sessions.
The court has considered all of the criteria of Sections46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account",Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated previously in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
1. The marriage of the parties is hereby dissolved on grounds of irretrievable breakdown. CT Page 515
2. The parties shall have joint legal custody of their minor child, Danielle. The plaintiff shall have physical custody of Danielle, and the defendant shall have the right of reasonable, liberal and flexible visitation with Danielle.
Since the parties' minor child, Jason, is presently in the custody of the Department of Children and Families, the court declines to enter any order concerning his custody as between the parties.
The plaintiff is ordered to undergo counseling for alcohol abuse and to participate in any alcohol treatment program recommended as a result of such counseling.
3. The defendant shall pay child support to the plaintiff in accordance with the child support guidelines. Since she is now a low-income obligor, no present order for child support is entered.
4. The plaintiff shall maintain medical insurance for the benefit of the minor child, and he shall be solely responsible for the cost of all unreimbursed and uninsured medical and dental expenses, including surgical, hospital, psychiatric, orthodontic and prescription expenses incurred by or on behalf of Danielle.
5. The plaintiff shall pay to the defendant as periodic alimony the sum of $200 per week until, pursuant to paragraph 6, the plaintiff pays one-half of the cost of the defendant's share in the former family home, or the house is sold and the proceeds distributed to the parties. Thereafter, the plaintiff shall pay $100 per week until the defendant's remarriage or the death of either party. The plaintiff shall also pay, as additional alimony, the monthly premium expense of a supplemental Medicare health insurance policy, up to and including an amount not to exceed $100 per month. The plaintiff's obligation to reimburse the defendant for the cost of said premium shall terminate if the periodic alimony obligation is terminated, or if the defendant is no longer eligible for such insurance coverage. The plaintiff shall pay alimony to the State of Connecticut in the amount of $1.00 per year.
6. Pursuant to Section 47-14g of the General Statutes, after the date of dissolution the parties will own the premises CT Page 516 at 36 Burr Road in Southbury as tenants in common. Within 60 days of the date of dissolution the plaintiff may buy out the defendant's share in the former family home by a payment in the amount of $68,427, representing one-half of the present equity in said property, based on the stipulated fair market value of $220,000 and the present mortgage amount of $84,000. One-half of said payment ($34,213.50) shall be paid to the defendant in a lump sum, and, upon receipt of that payment and the note referred to below, the defendant shall transfer to the plaintiff all of her right, title and interest in the former family home. The plaintiff shall execute a promissory note, without interest, secured by a mortgage deed on the property at 36 Burr Road for the remaining one-half of said amount, which note shall be payable in full upon the earlier of the parties' youngest child's graduation from high school, death or emancipation or seven years from the date of dissolution. In addition, in the event of a sale of the property or in the event of the commencement of a foreclosure action involving the property or in the event the plaintiff no longer resides in the property, then upon the happening of the earliest of such events, the unpaid balance of the note shall be immediately due and payable.
If the plaintiff is not able by refinancing or otherwise to make satisfactory arrangements for this payment within 60 days, the property shall immediately be listed for sale with a licensed broker chosen by the plaintiff at a listing price of $220,000. The plaintiff shall remain in possession of the premises until the house is sold, and he shall cooperate in every way in a good faith effort to sell the property if he is not able to make arrangements to purchase the defendant's share. He shall pay the mortgage on the property and save the defendant harmless from any liability, and he shall also be responsible for keeping the property insured for fire and liability and for keeping the real estate taxes current.
When the property is sold, the mortgage shall be paid as well as the brokerage commission, any attorneys' fees and the other usual closing costs, and the balance of the sale proceeds are to be divided equally between the plaintiff and the defendant.
The payment received by the defendant either from the plaintiff or from the sale of the premises shall be used to purchase non-qualified single premium life annuities with a guaranteed payout period of 15 years and with the parties' CT Page 517 children to be named equal beneficiaries thereunder in the event of the defendant's death prior to the expiration of the guaranteed payout.
7. The parties shall each be responsible for their respective shares of any capital gains taxes payable upon the sale of the former family home.
8. Each of the parties shall have sole ownership of the motor vehicles appearing on their respective financial affidavits and shall be fully responsible for any loans associated therewith and any operating costs, including insurance, on those vehicles.
9. Each of the parties shall have sole right, title and interest in any bank accounts, retirement and pension plans and other assets shown on their respective financial affidavits.
10. No orders are entered concerning the parties' personal property since the furniture, furnishings and other personal property of the parties has been previously divided to their mutual satisfaction.
11. The plaintiff shall be fully responsible for all of the liabilities shown on his financial affidavit of November 1, 1995 and shall hold the defendant harmless from any liability thereon. The defendant shall be responsible for the liabilities shown on her financial affidavit of October 30, 1995, except for the liabilities payable to the Waterbury Hospital and to the American Adjustment Bureau, and she shall hold the plaintiff harmless from any liability thereon.
12. The plaintiff shall maintain his present term life insurance policy written by Primerica in the face amount of $50,000, naming the defendant as primary beneficiary until his obligation to pay periodic alimony to the defendant shall terminate. The plaintiff shall pay all premiums for said insurance and shall provide the defendant annually with proof of said insurance coverage.
13. Each party shall pay her and his own counsel fees.
14. For all years in which joint tax returns have been filed by the parties, if there is any deficiency assessment in connection with any return filed with regard to either party's CT Page 518 income, that party shall pay the amount ultimately determined to be due thereon with regard to his or her income, together with any interest and penalties and any and all expenses that may be incurred if he or she decides to contest the assessment.
SHORTALL, J.