[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. Suit was commenced by service of the writ, summons and complaint upon the defendant on June 17, 1996. The plaintiff and the defendant were married on April 25, 1970 in Madison, New Jersey. There are three children issue of the marriage: William born August 10, 1972, Robert born July 21, 1975, and Mary Ashley born August 19, 1978. A stipulation signed by the parties has been filed in which the parties stipulate that the marriage has broken down irretrievably and in which it is recited that the defendant is at fault for causing the breakdown of the marriage.
The parties are each fifty-five years of age. The health of each of the parties is good; however, both have high blood pressure and both are on medication for the high blood pressure.
The plaintiff is an attorney at law and a member of the bar of the State of Connecticut. She presently is an associate with the Bridgeport law firm of Meyers, Breiner and Neufeld. She CT Page 9847 received her B.A. degree from Wheaton College in 1963, a Masters degree in Art History from the Institute of Fine Arts in 1968 and has completed all the course requirements for a PhD degree. She entered the University of Bridgeport Law School in 1984 and received her J.D. degree in 1987. After graduation from law school, she worked for the Stamford law firm of Cummings Lockwood as an associate in their family law department. She wished to specialize in estate planning and taxation and, therefore, pursued an LLM degree at New York University receiving that in 1995. She started working at Meyers, Breiner Neufeld in the fall of 1994 and earns $50,000 per year.
The defendant graduated from Harvard University in June, 1963. He then enlisted in the Marine Corps and served for three years, 1964 to May, 1967. In 1967 he was employed by Kidder Peabody as a stockbroker until 1969. He then worked for Citibank in their commercial banking department. In 1971, he entered Harvard Business School and graduated with a Master's degree in Business Administration in 1973. After graduation, he was employed as an assistant to the president for Wells Natural Resources putting together oil and gas deals. He received $35,000 to $40,000 per year plus stock options. He left this company in 1976 and worked with a geologist from Pittsburgh to purchase coal properties in West Virginia.
In May, 1977, the Mt. Storm Company was formed. This was purchased a month ago by the Patriot Mining and Anchor Group. The plaintiff and defendant have a general partnership interest and receive the proceeds of that partnership interest as an income stream. At present, pursuant to a stipulation executed by the parties on July 26, 1996, the plaintiff is receiving the partnership proceeds which by that stipulation are to pay for her normal and customary living expenses, the welfare, maintenance, health and education of the children and all reasonable expenses necessary to maintain the premises at 22 Ford Road in Westport.
The defendant is a money manager. After leaving Mt. Storm Partnership, he set up an oil and gas consulting company in 1979. That company was sold in 1983, the defendant receiving $250,000 for his interest in the company. In 1984, he joined Eben Graves and established EMG Advisors, Inc., an investment management company specializing in bonds. Mr. Graves died in 1987 and the defendant has continued the company. The plaintiff and the defendant own all the common stock in that company which the parties both report as having no value. CT Page 9848
The defendant is presently doing consulting work which will last to December 31 of this year. He is seeking a position in investment banking at an annual base salary of $150,000 to $200,000 plus a share of the profits if the profit center does well. He has been approached by Bio-Genesis Enterprises, Inc. to help it raise money and to find a market for their products. If that materializes, he will serve as chief financial officer at a salary of $125,000 per year.
EMG Advisors, Inc., has lost all but two or three of its clients. Two years ago there was an offer of $1,500,000 for purchase of the company. Both parties agree it has a negative value today.
In May, 1995, a lawsuit was brought against EMG Advisors, Inc. by Edward M. Gilbert in his capacity as Trustee of an Arizona pension firm claiming breach of a fiduciary duty. This lawsuit is pending in the United States District Court for the District of Arizona. An ex-parte injunctive order issued in that case on October 15, 1996 against the defendant, his wife, their agents, servants, employees and attorneys prohibiting and restraining them from disposing of any money or assets. (See defendant's exhibit 1.) Service of this order was made upon the defendant but was not made upon the plaintiff in this action.
The court has for determination a division of the parties' assets pursuant to the provisions of § 46b-81 of the General Statutes and alimony pursuant to the provisions of § 46b-82 of the General Statutes.
The parties have executed and filed a stipulation regarding alimony. The court has examined that stipulation, has considered the criteria of § 46b-82 of the General Statutes and approves the parties' stipulation and shall enter orders in accordance with that stipulation.
The property of the parties consists of the following: the family residence at 22 Ford Road in Westport with an equity value of $120,000; land on Lake Willoughby in Westmore, Vermont valued at $125,000; a cabin in North Brookfield, Massachusetts inherited from the defendant's parents also valued at $125,000; the Mt. Storm partnership valued at $130,000; an IRA account of the plaintiff's with a value of $1800; household furnishings valued at $5,000; and three automobiles, a 1986 Volvo valued at $1,000, a CT Page 9849 1987 Ford Crown Victoria valued at $1,000, and a 1991 Ford Explorer valued at $5,000 with an outstanding loan of $5,000.
As previously noted, the parties entered into a stipulation on July 26, 1996 providing for the assignment by the defendant to the plaintiff of his interest in the Mt. Storm Partnership proceeds and the assignment of his interest in the three parcels of real estate. This stipulation was presented to the court, found to be fair and equitable and orders entered in accordance with the parties' stipulation on July 26, 1996. The orders and transfers were made without prejudice to the rights of either party to petition the court for a transfer or reassignment of the assets to either party upon a hearing for dissolution of marriage. The parties are, therefore, before this court in a de novo proceeding.
In considering a division of assets of the parties, the court must be guided by the provisions of § 46b-81(c) of the Connecticut General Statutes. That section of the statutes provides as follows:
 In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.
The court has given particular weight to the length of the parties' marriage, the fact that the defendant admits fault for the breakdown of the marriage, the liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. Clearly, the defendant's ability, as demonstrated by the past, exceeds the plaintiff's ability regarding the opportunity for future acquisition of capital assets and income.
The court has considered all of the criteria of § 46b-81 and CT Page 9850 § 46b-82 of the Connecticut General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman,188 Conn. 232, 234 (1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v.Parry, 24 Conn. App. 307, 313-14 (1991).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The defendant is at fault for the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the ground of irretrievable breakdown of the marriage.
2. The defendant shall pay to the plaintiff as alimony the sum of $1.00 per year until the earliest to occur of the following events: the death of either party, the plaintiff's remarriage or the plaintiff's cohabitation as defined by § 46b-86 (b) of the General Statutes.
3. The plaintiff shall not petition the court for a modification of alimony unless the defendant's gross income from all sources exceeds $140,000 per year or the plaintiff's income is eliminated or substantially reduced through no fault of her own. In any modification, the court shall consider the defendant's contribution to the post-majority educational CT Page 9851 expenses of the children of the parties and the distribution of assets ordered by the court.
4. The real property located in Westport, Connecticut shall be the sole property of the plaintiff. Should the plaintiff choose to sell the property, the defendant shall have an option to purchase the property for its fair market value for a period of forty-five (45) days from the date of the plaintiff's listing the property for sale. The defendant shall vacate the family residence prior to December 31, 1996.
5. (a) The real property located in North Brookfield, Massachusetts, shall be the sole property of the plaintiff. She shall be responsible for payment of all taxes, insurance, and expenses of maintaining the property, and she shall have the right to receive any rental income therefrom. The plaintiff shall not sell the property for a period of five (5) years from the date hereof. Should she choose to sell the property, the defendant shall have an option to purchase the property for fair market value for forty-five (45) days from the date of notification of the plaintiff's listing of the property for sale. In the event that the plaintiff does not sell the property, she shall devise the property to one or more of the children of the parties.
 (b) The defendant shall have use of the premises from time to time as agreed upon between the parties. The defendant's use of said premises shall be for himself and any family and/or friends in his company. Any expenses incurred by the defendant for his use of the premises shall be borne by him together with a fair, allocated share of all expenses associated with the property during said period of use.
6. (a) The real property located on Lake Willoughby, Westmore, Vermont, shall be the sole property of the plaintiff. The plaintiff shall not list the property for sale prior to May 1, 1997. The defendant shall have a right of first refusal to purchase the property at its fair market value for a period of forty-five (45) days from the date of the plaintiff's listing of the property for sale.
 (b) The defendant shall have use of the premises at Westmore, Vermont, from time to time as agreed upon between the parties. Said use shall be for the defendant, his family and friends in his company. Any expenses incurred by the CT Page 9852 defendant for his use shall be bourne by him together with a fair, allocated share of all expenses associated with the premises during said period of use.
7. In the event the parties are unable to agree on the term "fair market value", "fair Market value" shall be determined as follows. The parties shall choose a qualified real estate appraiser who shall determine the "fair market value." If the parties are unable to agree to the "fair market value" after such appraisal, they shall choose a second qualified real estate appraiser who shall determine the "fair market value." In the event the parties still are unable to agree to the "fair market value" of said premises after said second appraisal, the two real estate appraisers previously chosen by mutual agreement of the parties shall determine the "fair market value" of said premises and said "fair market value" so determined shall be binding upon the parties.
8. The plaintiff shall be the sole owner of the stream of income from the sale of the Mt. Storm Partnership. The plaintiff has represented that she intends to obtain a loan against such proceeds in the approximate amount of $130,000. She shall obtain such proceeds and the proceeds shall be disbursed as follows:
 1. tuition for Mary at Choate for 1996-97 in the approximate amount of $20,000;
 2. current property taxes owed in Vermont and Massachusetts in the amount of $2500; and
 3. $7500 shall be held in escrow for the payment of 1996 income taxes.
 The remaining proceeds shall be divided one third to the defendant and two thirds to the plaintiff. The plaintiff shall be responsible for the payment of two thirds of the income tax consequences attributable to this asset and the defendant shall be responsible for the payment of one third of the income tax consequences attributable to this asset.
9. Each of the parties shall own free of any claim or demand of the other party, her or his shares of stock in EMG Advisors, Inc. CT Page 9853
10. The IRA account in the plaintiff's name shall be wholly hers free of any claim or demand by the defendant.
11. The plaintiff shall pay, indemnify and hold the defendant harmless from any and all liability on the following debts:
 1. all debts relating to the premises at 22 Ford Road, Westport, Connecticut, including but not limited to the Norwest Mortgage on said premises having an approximate present balance of $225,000;
2. the Urich family loans in the amount of $10,000;
3. the plaintiff's student loans in the amount of $20,000;
 4. the Knight Tuition Plan for Robert in the amount of $10,000;
 5. the Knight Tuition Plan for William in the amount of $33,000;
 6. one-half (1/2) of the indebtedness owed to Day, Berry Howard; and,
 7. one-half (1/2) of the credit card debt of the parties in the amount of $10,000.
12. The defendant shall pay, indemnify and hold harmless the plaintiff from any and all liability on the following debts:
 a. any claims or lawsuits arising from the defendant's activities in connection with EMG Advisors, Inc.;
 b. all business and personal loans which are included in "business and personal loans" set forth in his financial affidavit, except such personal loans which may be noted as the plaintiff's obligation under paragraph 11 above;
c. his Harvard student loan;
d. the indebtedness to Nancy Graves in the amount of $10,000;
e. one-half of the indebtedness owed to Day, Berry and Howard;
f. the amount owed to the DiConcini law firm; CT Page 9854
 g. any judgment in the action entitled Edward W. Gilbert as Trustee, et al v. EMG Advisors. Inc., et al, pending in the Federal District Court for the District of Arizona bearing docket number CV95 277 TUC ACM;
 h. the Knight Tuition Plan for William in the amount of $23,000; and,
 i. the remaining balance of the credit card debt of the parties.
13. The defendant shall transfer all of his right, title and interest to the Ford Explorer to the plaintiff who shall assume the remaining loan obligation in the approximate amount of $5,000 and shall indemnify and hold harmless the defendant from any claim or demand thereon;
14. The parties shall divide their tangible personal property by mutual agreement. In the event that the parties cannot agree on the division of their tangible personal property, the court shall retain jurisdiction to make further orders in this regard.
15. The defendant shall indemnify and hold the plaintiff harmless from any and all liability, including interest and penalties, that may arise by reason of the execution of any joint income tax returns heretofore or hereafter filed by the parties, except as to any obligation arising from income of the plaintiff not previously disclosed to the defendant.
16. The plaintiff shall be entitled to claim the dependency deduction for Mary; the defendant shall be entitled to claim the dependency deduction for Robert.
17. The parties shall cooperate in the preparation of their individual federal and state income tax returns for 1996 and shall cooperate in the allocation of deductions to the extent provided by law. Any additional tax liability of either or both parties shall be paid from the $7,500 escrowed loan proceeds from the Mt. Storm partnership. Any additional liability for income taxes of either party arising from income to date or from the proceeds of the Mt. Storm partnership or consultancy fees shall be shared equally by the parties. In the event that proceeds remain from the CT Page 9855 escrow after payment of all 1996 income taxes, plaintiff shall receive two thirds of the remaining escrow and the defendant shall receive one third of the remaining escrow.
18. The defendant shall have medical and dental insurance for himself through the plaintiff's employee health insurance under the provisions of COBRA for a period of three (3) years from the date of dissolution of marriage or until the defendant obtains such insurance through his employment, whichever shall first occur. The cost of the premiums for said health insurance for the defendant through the plaintiff's employee health insurance policy under COBRA shall be paid by the plaintiff for a period of eighteen (18) months.
19. The plaintiff is presently the owner of a term life insurance policy on the life of the defendant. The plaintiff shall continue to own such policy and shall be solely responsible for the payment of all premiums thereon. The defendant shall cooperate with the plaintiff in obtaining substitute coverage on his life so long as he shall have any alimony obligation. The defendant is presently the owner of a term life insurance policy on the life of the plaintiff. The defendant shall continue to own such policy and shall be solely responsible for the payment of all premiums thereon.
20. Each party shall pay her or his own attorney's fees.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE