[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties having been married on October 13, 1990, on the return date of the writ they had been married just under five years. There are three children issue of the marriage, the oldest of whom has just turned five, and the younger twins recently turned four.
Commendably, the parties have agreed through mediation, with the help of the Family Services Office, on a shared custody arrangement whereby the children are with their mother four nights during the week and their father three nights. The issues remaining between the parties are solely financial. They include the amount and term of any alimony payable by the defendant, Mr. LeBlanc, to the plaintiff, Mrs. LeBlanc. In addition, while the CT Page 81 parties agree that Mr. LeBlanc should quit-claim his interest in the former family home to Mrs. LeBlanc, they are at issue over whether Mrs. LeBlanc should, as is common in such cases, indemnify him for any failure on her part to pay the mortgage and other expenses associated with the house. The parties are also in disagreement over the proper amount of child support and whether or not a deviation from the guidelines figure is appropriate.
Mrs. LeBlanc is presently employed on a part-time basis as a cook in a nursing home at an hourly wage rate of $8.87. At the time of trial she was not working because of an ankle injury suffered on November 1, 1996 and expected to return to work part-time in January 1997. Given the ages and school schedules of the three minor children who are in Mrs. LeBlanc's care during most of the school week, the court finds that Mrs. LeBlanc is able to work only on a limited basis for the next two years, until the children are all enrolled in school full-time. Mr. LeBlanc's gross weekly income is $769, the weekly equivalent of approximately $40,000 annually. The court finds this to be his maximum earning capacity, and that he is making a genuine effort to maximize his resources in order to support himself and his three children both while they are in his care and in Mrs. LeBlanc's.
The former family home has an approximate equity of $10,000, and Mrs. LeBlanc has life insurance policies with a cash surrender value totalling $2,000. Other than these resources, the parties have no assets other than their personal motor vehicles. On the other hand each has substantial liabilities, in the approximate amount of $19,000 each, including their car loans.
The court has considered all of the criteria of Sections46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated subsequently in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria."Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give CT Page 82 equal weight to each factor. Kane v. Parry, 24 Conn. App. 307,313-14 (1991).
Given the number of young children and the respective expenses of each party in setting up their separate households, this is a case in which both parties need to make the most of their limited resources. Mr. LeBlanc clearly has an earning capacity both in the short-run and the long-run that is higher than Mrs. LeBlanc's. On the other hand, Mrs. LeBlanc has opportunities for increasing her income by making full use of the capacity of the former family home to take in a boarder, as she has in the past, or, as a licensed Department of Mental Retardation provider, to take in a DMR client. The record does not contain evidence as to the size of Mrs. LeBlanc's home; therefore, the court cannot find that Mrs. LeBlanc could do both at the same time, but she clearly could do one or the other. In the past a boarder has paid $75 a week, and the limited evidence at trial has indicated that a DMR client might generate income as high as $1,000 a week. The court found at a pendente lite hearing in October 1995 that, "[g]iven the limited financial resources of both parties . . . maintenance of the plaintiff's household will require her to increase her present employment even after an award of child support and alimony". While the court has found that Mrs. LeBlanc is unable substantially to increase her present employment, she could increase her household income in the ways indicated, and the court will take that into account in entering financial orders.
Given the fact that Mrs. LeBlanc owned the former family home prior to the parties' marriage, it is both just and sensible to accept the parties' agreement that Mr. LeBlanc quitclaim his interest in the house to her. No reason appears, however, not to require Mrs. LeBlanc to provide the usual "hold harmless" provision to Mr. LeBlanc. The court concludes that, in undertaking the obligation to refinance the home when he and Mrs. LeBlanc married, in order to buy out Mrs. LeBlanc's former husband, Mr. LeBlanc extended his own credit in the expectation of a long-term marriage and the attendant use of the home. His expectations not having been realized, he is reasonably requesting indemnification from continued liability.
The court concludes that the guidelines child support figure in this case is $237 weekly. In arriving at that conclusion the court imputes to Mrs. LeBlanc the potential income she could obtain by taking a boarder but does not include any allowance for CT Page 83 her taking a DMR client. Nor does it include the $95 order recently entered in the file of Behlman v. Behlman (FA88-0086343) as child support for a teenage son from her previous marriage. The guidelines do not permit the court to consider that as part of her income for computing the guidelines support figure. Of course, the court cannot be unaware of its availability to Mrs. LeBlanc in deferring the expenses of her household.
While a deviation from the guidelines would clearly be called for and has previously been ordered by the court at the pendente lite stage of this case, Mr. LeBlanc has agreed to pay the full guidelines figure. In view of that the question becomes whether or not he has resources available to pay an additional amount as alimony to Mrs. LeBlanc. In order to maximize his net weekly income the court intends to award the three income tax deductions of the minor children to Mr. LeBlanc. According to the court's calculations, his gross weekly income of $769 will yield a net weekly income after taxes and Social Security of approximately $560. Payment of child support in the amount of $235 will leave him with a net weekly income of $325. His reasonable and necessary weekly living expenses, based on his financial affidavit of November 27, 1996 ($495) far exceed that amount. Therefore, the court believes that no order of alimony is appropriate in this case, since Mr. LeBlanc is already maximizing his earning capacity and still falling short of meeting his reasonable expenses, including those attendant upon his shared custody of the minor children.
As usual, the court heard considerable testimony from each party attempting to assign the blame for the marriage breakdown to the other. Mrs. LeBlanc accused Mr. LeBlanc of "mental, emotional and psychological abuse". Mr. LeBlanc accused Mrs. LeBlanc of losing her temper with him and the children to the point where he felt that the children were in danger from her. He implied that Mrs. LeBlanc may have had a prescription drug abuse problem, but no substantial evidence was introduced. The court believes that the cause of the breakdown of the parties' marriage was the birth of three children within a period of less than a year in 1991 and 1992. This placed enormous strains on the parties, and they seem to have reverted to behaviors that may have been present earlier in their lives and which led to the ultimate breakdown. The court assigns no greater degree of responsibility to one party over the other.
Finally, Mrs. LeBlanc claims an arrearage of pendente lite CT Page 84 child support and alimony previously ordered by the court. For several months during 1996 the parties resumed living together and seemed to have had a private arrangement which would have allowed Mr. LeBlanc to pay less weekly than the court had previously ordered. Mrs. LeBlanc claimed that Mr. LeBlanc did not live up to that arrangement, but introduced no credible evidence on this subject or as to the amount, if any, of any deviation from the court's order. When parties privately agree to "modifying" previous court orders, they cannot expect the court to enforce the original order without clear proof of noncompliance by the other party.
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
 1. The marriage of the parties is hereby dissolved on grounds of irretrievable breakdown.
 2. The parties shall have joint legal custody of the three minor children. The shared parenting plan contained in a family services report completed on October 24, 1995 shall become an order of the court.
 3. The defendant shall pay to the plaintiff as child support the amount of $235 weekly by way of a contingent wage execution.
 4. Within 30 days of the date of dissolution, the defendant shall quitclaim to the plaintiff all of his right, title and interest in the premises located at 55 General Patton Drive, Naugatuck, Connecticut. Thereafter, the plaintiff shall be solely responsible for payment of the mortgage, taxes, homeowners insurance and any other charges associated with that premises, and she shall indemnify and hold the defendant harmless from any liability thereon.
 5. Other than as specified in paragraph 4, above, the parties shall retain all the assets shown on their financial affidavits submitted at the time of trial, CT Page 85 and shall execute any necessary papers to transfer ownership of the motor vehicles shown thereon. That is, the plaintiff shall have the full ownership interest in the 1992 Ford Taurus, and the defendant shall have the full ownership interest in the 1994 Jeep, and each shall be responsible for the liabilities associated with those vehicles. If the execution of any motor vehicle forms is necessary to effect this court order, the parties shall execute such forms within 30 days from the date of dissolution.
 6. The parties shall be responsible for the payment of the liabilities shown on their respective financial affidavits submitted at the time of trial, and each shall indemnify and hold the other harmless from any liability thereon.
 7. The defendant shall provide comprehensive medical insurance for the minor children, and any unreimbursed and uninsured medical bills shall be shared on an equal basis.
 8. The defendant shall provide life insurance as available to him from his employment in the amount of $50,000, with the three children as primary irrevocable beneficiaries and the plaintiff as trustee for the benefit of the children until the youngest child attains the age of 18.
 9. The defendant is entitled to the exemptions for the parties' three children. The plaintiff shall sign the necessary IRS waiver forms on an annual basis.
 10. The defendant shall pay to the plaintiff the sum of $358.80 representing the one car payment he was ordered to pay at the pendente lite stage of this case and has not paid.
11. Each party shall pay her and his own attorney's fees.
SHORTALL, J. CT Page 86