[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties were married on August 22, 1964; at the time of the complaint in this action, therefore, they had been married more than 30 years. There are three children issue of the marriage, all of whom have reached their majority.
The plaintiff, Mrs. Pelkey, is 49 years old and a high school graduate. At 30 years of age she suffered a stroke which has left her seriously disabled both physically and mentally. She has not worked for any sustained period of time since the early 1980's and then only at an Easter Seals center. She presently lives in the former family home, which was built by her and the defendant in 1968. The parties stipulated to a fair market value of $120,000, and the outstanding mortgage is $98,500. Mrs. Pelkey's only other asset is $7,000 which remains from an inheritance she received from her father some years ago.
Mr. Pelkey, the defendant, is 53 years old and has two years of a high school education. He has worked in construction all his life and with his present employer for more than three years. According to his financial affidavit of June 25, 1996, for the first five months of 1996 his average net weekly income was $944, and the court considers that a reasonable indication of his earning capacity. At the hourly wages testified to by Mr. Pelkey this represents 37 hours weekly at his base rate of $22.25 per hour and 13 hours of overtime at time and a half, for a total work week of 50 hours. In addition to his equitable interest in the former family home, Mr. Pelkey owns mutual funds with an approximate value of $2,000, an annuity valued at $19,276 and a pension through the Operating Engineers union, which would pay him at the rate of $506 per month at its present value.
The major issues between the parties are the amount and duration of periodic alimony payable by Mr. Pelkey to Mrs. Pelkey and the disposition of the former family home and the CT Page 5114-TTTT equity therein.
The court has considered all of the criteria of Sections46b-62, 46b-81 and 46b-82 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherrv. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated subsequently in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
Based on the court's observations and the testimony at trial, the court finds that Mrs. Pelkey is essentially unemployable at least on a full-time basis, and that she has a continuing need for income. The weekly expenses as shown on her financial affidavit of June 25, 1996 total $510, and the court can find little to question in that amount. Mr. Pelkey's weekly income from employment is sufficient to enable him to pay substantial periodic alimony for the balance of Mrs. Pelkey's life and still maintain a reasonable standard of living for himself. While the court finds that Mr. Pelkey has the primary continuing duty to support Mrs. Pelkey, it is mindful of the potential availability to her of other sources of support, and its order will include the requirement that Mrs. Pelkey pursue all such sources.
Mrs. Pelkey is presently living in the former family home and has lived there for 28 years. Based on her present condition, the court concludes that she should remain in that residence. Questions then arise as to the relative shares of the parties in the present equity and how that should be distributed.
A few years ago Mr. Pelkey refinanced the mortgage and used a substantial portion of the proceeds to become a quarter-owner in a new business. In 1993 the business was dissolved, and Mr. Pelkey was paid $25,000 as his share of the business' value at that time. Rather than using the money to reduce the mortgage CT Page 5114-UUUU on the former family home, he paid off a portion of a loan from his mother and unspecified "household bills". The court concludes from these transactions that Mr. Pelkey has already obtained a substantial benefit from the equity in the former family home, and that it is not inequitable to assign Mrs. Pelkey the equity remaining at the present time.
The court has also taken into account the relative contributions of the parties to the breakdown of their marriage. Based on the testimony, the court finds that the cause of the breakdown was the effects, over time, of Mrs. Pelkey's stroke. Mr. Pelkey testified that he stood by Mrs. Pelkey after her stroke, and the court accepts that testimony. Even during the pendency of this action Mr. Pelkey has been paying the expenses of Mrs. Pelkey's household as well as $120 per week in pendente lite alimony.
About two to three years prior to this action being brought, however, Mr. Pelkey began a relationship with his daughter-in-law, the mother of the parties' grandchild, which can at best be described as indiscreet. On one occasion in 1992 Mr. Pelkey and his daughter-in-law took a two-week vacation together with the parties' grandchild, during which vacation, Mr. Pelkey testified, they slept in the same motel room. He denied any sexual relationship at that time and testified that a sexual relationship began at the time he moved out of the former family home, around September 1994. This was two months before this present action was begun. Mr. Pelkey now lives with his former daughter-in-law, she having been divorced from the parties' son on March 13, 1996[1], acknowledges an ongoing sexual relationship with her and has made her the beneficiary of his life insurance.
Of all this Mrs. Pelkey has been painfully aware. The court concludes that this relationship contributed to the ultimate breakdown of the parties' marriage.
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders: CT Page 5114-VVVV
1. The defendant shall pay to the plaintiff as alimony for her lifetime the sum of $450 per week. This obligation shall terminate on the death of the plaintiff or the defendant or the remarriage of the plaintiff or her cohabitation as defined in Section 46b-86(b) of the General Statutes.
The plaintiff shall promptly apply for and pursue Social Security income and any other state or federal financial assistance which may be available to her. She shall advise the defendant of any such applications and keep him advised on a timely basis of the results.
2. The defendant shall forthwith designate Mrs. Pelkey as the primary irrevocable beneficiary of any and all life insurance which he presently owns. He shall provide satisfactory evidence of such designation within 30 days of the date of this order. He shall continue to pay the premiums on such policies, shall make no future changes of beneficiary during the period his alimony obligation to the plaintiff continues and shall provide the plaintiff with an authorization entitling her to obtain such information as is necessary to insure that he is current on his obligation to maintain such insurance and to continue her designation as the primary irrevocable beneficiary.
3. The defendant shall maintain the plaintiff on his health insurance for the maximum period permitted by law. Thereafter, the defendant shall cooperate in the continuation and conversion of said health insurance on behalf of the plaintiff. That cooperation shall include but not be limited to notifying the health insurance carrier of the dissolution, and securing whatever forms and description of coverage may be available, which shall be furnished to the plaintiff promptly. Plaintiff shall be responsible for the cost of her insurance.
4. Within 30 days of this date the defendant shall transfer by quitclaim deed all his right, title and interest in the former family home located at 188 Cook Road ("Hemlock Road") in Prospect, Connecticut. After the date of such transfer the plaintiff shall be responsible for paying the mortgage and taxes on said property and for keeping it fully insured, and she shall indemnify and hold the defendant harmless from any responsibility for those charges.
5. Upon the retirement of the defendant or upon the plaintiff's election to begin receiving benefits at an earlier CT Page 5114-WWWW date on or after the defendant's earliest retirement age under his union pension plan ("the plan"), the plaintiff shall receive directly from the plan, for the period of her lifetime, a 50% share of the pension's accrued value as of the date of dissolution. To the extent permitted by the plan the plaintiff shall be considered a surviving spouse for the purpose of receiving any survivor or death benefits in the event the defendant dies prior to or after his retirement, but only to the extent of her proportionate share as above. She shall also receive 50% of the present value of the defendant's annuity. Counsel for the plaintiff shall prepare a QUADRO or a QUADRO-like instrument(s) necessary to effect a tax-free transfer of such interests from the defendant to the plaintiff, and the defendant shall cooperate in any way necessary to effectuate such transfer. The court retains jurisdiction to approve said instrument(s) and to resolve any questions pertaining to them.
6. The defendant shall retain his interest in the John Hancock mutual funds shown on his financial affidavit of June 25, 1996, and the plaintiff shall retain her interest in the remainder of the inheritance she received from her father.
7. Each party is to retain ownership of the automobile shown on her and his financial affidavits of June 25, 1996, as well as having exclusive ownership of any personal property in her or his possession free of any claim of the other. The parties shall be individually responsible for all of the liabilities shown on their respective financial affidavits or incurred by them since the date of separation (November 1994) and shall indemnify and hold the other party harmless from any liability thereon.
8. Each party shall pay her and his own counsel fees.
/s/ Shortall __________________________, J. SHORTALL