[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties were married on December 23, 1989, and they separated on November 2, 1994. There are no children issue of the marriage. At the time this action was returned to court in August of 1995 the parties had been married about five and a half years.
Mr. Brown, the plaintiff, and Mrs. Brown, the defendant, are 36 and 44 years of age, respectively. Although both have had health problems in the past, neither's present employability is affected by these problems. Mr. Brown is a "stationary engineer" at an I.B.M. facility in Southbury. While his yearly earnings have varied due to changes in the availability of overtime, the court finds from the evidence that he has a present earning capacity of $50,000 annually.
Mrs. Brown is a "closing administrator" at the Norwalk Savings Society, with a present gross annual income of approximately $27,000. Her ultimate earning capacity may be somewhat higher, based on her paralegal skills and experience, but she is now just returning from an extended absence due to a workers' compensation injury. She presently has 45 of the 60 credits necessary to obtain an Associate's degree in paralegal studies.
Mrs. Brown's only real assets are her motor vehicle, which has a value of $3,500, and the furnishings in the former family home at 62 Hanover Road, Newtown. She does list as assets claims for unpaid child support from two previous husbands in the amount of $38,000, but her ability to collect on either of those claims is entirely speculative. Mr. Brown owns a motor vehicle with a fair market value of $17,000, and he has an annuity worth $17,800 and a workers' compensation claim which he expects to come to fruition in October 1996. Each party has liabilities just over $20,000, including the loans outstanding on their individual automobiles.
The parties purchased the former family home at 62 Hanover Road, Newtown, in December 1991 for $181,500. There was a first CT Page 5578-LL mortgage at that time in the amount of $163,300. In 1994 it became necessary for the parties to secure an emergency mortgage assistance loan from the Connecticut Housing Finance Authority (CHFA) because they had fallen behind significantly in their payments on the first mortgage due to Mrs. Brown's absence from work because of a work-related injury, as well as to other accumulated bills. The present outstanding balance on the two loans together is $177,000.
Neither party introduced testimony that would establish reliably the present fair market value of this property, each relying on hearsay testimony for that purpose. Their claimed values vary, from $150,000 (Mr. Brown) to $181,000 (Mrs. Brown). The court has chosen a method for disposing of the property, however, that obviates the need for a finding on this issue.
The court has considered all of the criteria of Sections46b-62, 46b-81 and 46b-82 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherrv. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated subsequently in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
The principal issues between the parties are the disposition of the former family home, the amount and term of alimony to be paid by Mr. Brown to Mrs. Brown and the effect, if any, to be given to the parties' respective roles in contributing to the breakdown of their marriage. On the last of these issues the court finds that Mr. Brown was more responsible than Mrs. Brown for the breakdown. The court bases this finding principally on the testimony of Mrs. Brown as to her husband's use of illegal drugs. Mrs. Brown described Mr. Brown's cocaine use at various periods during the marriage quite specifically, and, although Mr. Brown made a general denial of these claims in his testimony, he never offered testimony specifically to rebut the claims of Mrs. Brown. CT Page 5578-MM
Mr. Brown has suggested that the former family home be immediately listed for sale, with the parties splitting equally any proceeds of the sale or any deficiency resulting from the sale. Mrs. Brown requests that she be given an opportunity to try to save the house from foreclosure by taking over the responsibility for payments on the loans and other costs associated with the house. In order to pay the two outstanding mortgages on the house Mrs. Brown needs almost $400 a week. This makes her total weekly expenses almost $900, based on her financial affidavit of July 8, 1996, and the court finds little to question in the expenses shown on that affidavit. At the present time her weekly income from her employment and from rent paid by one of her sons from a previous marriage totals approximately $500 per week.
Mrs. Brown proposes to make up the difference by renting the first floor of the premises and by charging her other son rent as well. Finally, alimony is requested from Mr. Brown to close the gap between her expenses and income.
Considering the present incomes and earning capacities of the parties, including each party's tax status, the court finds that an award of $200 weekly is a reasonable amount of alimony. Even this addition makes Mrs. Brown's ability to carry the former family home questionable, but her proposal gives at least some chance of saving the house from foreclosure and all of the attendant adverse consequences to the parties' financial status and future credit prospects. Therefore, the court's orders will afford Mrs. Brown an opportunity to implement her plan for a period of time limited so as not to jeopardize unduly both parties' financial circumstances.
By three years from this date, the defendant's youngest child from her previous marriage will be almost 18 and her earning capacity should have increased. Moreover, it should be possible for the defendant to complete the credits necessary toward her Associate's degree within that period of time.
The court believes that the two assets owned by Mr. Brown; viz., his annuity and his workers' compensation claim, should be shared equally with Mrs. Brown. See Tyc v. Tyc, 40 Conn. App. 596
(1996).
The court finds that it has jurisdiction, that the CT Page 5578-NN allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
1. The plaintiff shall pay to the defendant as alimony the sum of $200 weekly for a term of three years. This order may be modified as to amount but not as to term. The plaintiff's payments are to be secured by a contingent wage execution. The receipt of rental income by the defendant shall not be a basis for modifying the amount of alimony. Said alimony shall terminate upon the death of either party or the remarriage of the defendant and may be suspended, terminated or reduced upon the cohabitation of the defendant with an unrelated male as set forth in Section 46b-86(b) C.G.S.
2. The plaintiff shall maintain a life insurance policy in the amount of $25,000 naming the defendant as irrevocable beneficiary for as long as he is obligated to pay alimony. The plaintiff shall provide proof annually that said insurance is in effect, and that the defendant is the beneficiary thereof.
3. The plaintiff shall forthwith quitclaim all of his right, title and interest in the premises at 62 Hanover Road, Newtown, Connecticut, to the defendant, and she shall be responsible for and hold the plaintiff harmless and indemnify him from any and all expenses related to said home, including the first mortgage, CHFA mortgage, notes owed to Marie Scime and Vera Calabrese, insurance, taxes and utilities. The defendant's assumption of these obligations shall not be considered dischargeable in any bankruptcy proceeding where such discharge would allow a third party creditor to seek satisfaction of the indebtedness from the plaintiff.
Within three years of the date of dissolution the defendant shall refinance and consolidate the existing obligations on this property, removing the plaintiff's name from the current notes. If the defendant is not able to accomplish this, the property shall be immediately listed for sale and sold, and the parties shall share equally in any proceeds or in any deficiency. Before the defendant shall list the property for sale under this paragraph, she shall have made formal application for refinancing to at least two lending institutions, and she shall provide CT Page 5578-OO evidence of those applications to the plaintiff.
If at any time within the next three years the mortgages or either one of them become more than 60 days overdue, the defendant shall immediately list the property for sale, and, upon its sale, the parties shall share equally in any net proceeds or deficiency. On a quarterly basis the defendant shall provide the plaintiff with copies of statements from the bank and CHFA indicating the payment status of both the first mortgage and the CHFA mortgage on the premises.
If at any time within the next three years the defendant decides to sell the property, upon its sale the parties shall share equally in any net proceeds or deficiency.
If the defendant refinances the property, removing the plaintiff's name from the outstanding notes, within three years from this date and later sells the property, she shall receive the entire net proceeds of the sale.
4. The parties shall divide any jointly owned furniture equally, and the plaintiff shall be permitted to retrieve any such property from the former family home at a mutually agreeable time. In the event the parties are unable to agree on their respective share in any jointly owned furniture, the matter is referred to the Family Services Office in accordance with Valenti v. Valenti, 180 Conn. 528, 533 (1980), for investigation, conciliation and report. The court retains jurisdiction to resolve any issues regarding personal property that the parties do not resolve between themselves or through the Family Services Office.
5. The plaintiff shall retain exclusive possession and ownership of the vehicle shown on his financial affidavit of July 10, 1996, as well as a 1993 Ford Probe, and he shall indemnify and hold the defendant harmless from any and all expenses related to said vehicles. The defendant shall retain exclusive possession and ownership of a 1992 Ford Tempo shown on her financial affidavit of July 8, 1996 and shall indemnify and hold the plaintiff harmless from any and all expenses related to that vehicle. The plaintiff shall convey his one-half interest in the 1992 Ford Tempo to the defendant.
6. The plaintiff shall be solely responsible for the payment of all liabilities shown on his financial affidavit of CT Page 5578-PP July 10, 1996, and he shall indemnify and hold the defendant harmless from any liability thereon as well as on a promissory note payable to Robert Mathison in the approximate amount of $2,500. The defendant shall be responsible for all of the liabilities shown on her financial affidavit of July 8, 1996, and she shall indemnify and save the plaintiff harmless from any liability thereon. The plaintiff shall cooperate with the defendant in processing outstanding claims for insurance reimbursement for medical expenses and provide the defendant with the necessary follow-up documentation and forward to her any insurance payments received by him.
7. The plaintiff's annuity in the present approximate amount of $17,800 shall be divided equally by the parties by a qualified domestic relations order to be prepared by the defendant's counsel or by some other form of non taxable transfer allowed by the plan administrator. The court will retain jurisdiction to resolve any questions concerning this transfer.
8. Any workers' compensation payments received by the plaintiff by settlement or otherwise, regardless of the type or nature of the payment, shall be divided equally between the parties upon its receipt. The court will retain jurisdiction to resolve any questions concerning this division.
9. Each party shall pay his and her own counsel fees, except that the plaintiff shall pay $1,000 toward the defendant's counsel fees within 60 days.
/s/ Shortall, J. ---------------- SHORTALL