[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties were married on September 18, 1971; therefore, on the return day they had been married almost 24 years. There are three children who are issue of the marriage, one of whom remains a minor. They are at issue over the amount and duration of alimony to be paid, the amount of child support, the disposition of the former family home and their respective shares in the pensions to which they each are entitled by virtue of their employment.
The plaintiff, Mr. Faraci, is 48 years old and describes his present health as "fair". He suffers from diabetes, for which he requires insulin treatment, arthritis and hypertension. He has been employed by the state Correction Department since 1978 and is presently a lieutenant. His current gross weekly salary is $866 ($45,000 annually), and no evidence was introduced that he CT Page 3519 has any substantial income from any other source.
Mrs. Faraci, the defendant, is 46 years old and describes herself as "healthy". She presently works two part-time jobs, as a store clerk and with an answering service. Her gross weekly income is $245 ($12,740 annually).
For 23 years during the marriage Mrs. Faraci held a responsible position with the Woodbury Telephone Company. She left that employment in November 1995, when she was earning approximately $30,000 annually. She left because her abuse of alcohol had become an issue at her job, and she declined to participate in a weekend alcohol evaluation. At the time she left it was clear that she would soon be fired, and the company made it equally clear that they would not welcome her application for reemployment.
Based on this employment history Mr. Faraci argues that Mrs. Faraci's earning capacity is considerably greater than her present earnings. The court questions that claim. Mrs. Faraci was undoubtedly able and productive for the many years she worked at the phone company. Given the extent of her alcohol abuse, it is doubtful that at the present time she would be able to earn at the same level as she was earning when she left her employment in 1995. The time may come when she will be able to return to that level of earning, and the court's orders will seek to encourage her to pursue that goal. At the present time, however, the court believes that her earning capacity is accurately reflected in her present earnings and will base its orders concerning child support and alimony on that finding.
The parties jointly own the former family home at 76 Fox Road in Woodbury, and Mr. Faraci and their remaining minor child reside there. Since Mrs. Faraci left the home in the latter part of 1995, Mr. Faraci has assumed all expenses of the home and the support of their daughter. The home was built in 1972, and both parties paid for it through their earnings. The land upon which the home was built was a gift to Mrs. Faraci after the parties' marriage, and the court considers it, therefore, to have been a gift to the marriage.
The parties stipulated that the home presently has a market value of $87,500. Although there is no outstanding mortgage, there is a line of credit with a present balance of $31,500. According to Mr. Faraci, the home is in poor condition, requiring CT Page 3520 a new roof and attention to a major crack in the foundation.
Both parties have vested pensions by way of their employment or, in Mrs. Faraci's case, her former employment. According to Exhibit D, Mrs. Faraci's pension will pay her $987 monthly beginning at her "normal retirement age". (No evidence was introduced as to what that age is.) Mr. Faraci will be eligible to take a "hazardous duty retirement" as an employee of the Correction Department in less than two years. There was no evidence that he intends or will be required to leave his employment before then. According to Exhibit F, his monthly benefit will be approximately $1,900.
Mrs. Faraci has telephone company stock valued at $9,900, while Mr. Faraci has such stock with a value of $3,200. The parties jointly own a campground timeshare valued at $1,500 on Mrs. Faraci's financial affidavit.
The court has considered all of the criteria of Sections46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated subsequently in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria."Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307,313-14 (1991).
For its first 18 years this marriage appears to have been unexceptionable. Both parties made substantial economic and non-economic contributions to the marriage and to the raising of their three children. In 1989, however, following the death of her father, Mrs. Faraci began substantially to abuse alcohol. Although Mrs. Faraci attributed her alcohol abuse not only to the death of her father but to verbal abuse she experienced from Mr. Faraci, her testimony was that that abuse occurred during the period from 1990 to 1995, and the court cannot find that it was anything other than a reaction to Mrs. Faraci's alcohol abuse CT Page 3521 rather than its cause.
Throughout most of the period from 1989 to 1995 Mrs. Faraci resisted all suggestions that she had a drinking problem. Although she agreed to participate in family counseling, she walked out of each of the scheduled sessions after a short time. Her alcohol abuse became a problem at her employment and ultimately cost her her long-term position there.
Mrs. Faraci now acknowledges that she began drinking to excess in 1989-90. At the time of trial she testified that she had not had a drink in over eight months and that she had attended Alcoholics Anonymous on a weekly basis for seven or eight months in 1995-96. At the time of trial she was apparently not in any treatment regimen; she had stopped going to A.A. when she took her second job at the phone answering service.
One of the factors to be considered by the court in distributing the parties' property is their relative contributions to the breakdown of their marriage. In this case the court finds that the primary cause of the breakdown is Mrs. Faraci's abuse of alcohol, beginning in 1989-90 and continuing over the next five years, as well as her resistance to efforts made by Mr. Faraci and the parties' children to have her come to terms with her problem. The court must recognize the struggle and courage that it has taken and will continue to take Mrs. Faraci to deal with her illness and seek to overcome it, but it cannot overlook the damage to Mr. Faraci, their children and their marriage which her alcoholism has caused. The court will take this factor into consideration in distributing the assets of the parties.
Regarding alimony, there is presently a gap of approximately $350 between the parties' net weekly incomes, as measured by the child support guidelines worksheet submitted by Mr. Faraci's counsel. The court does not believe that it would be appropriate to equalize their weekly incomes inasmuch as Mr. Faraci will continue to have the full responsibility for maintenance and upkeep of the former family home under the court's orders, as well as the care and custody of the parties' remaining minor child. Nor is there sufficient money to allow the court to do so. Recognizing that Mrs. Faraci's earning capacity is presently depressed, the court will order Mr. Faraci to supplement her earnings for a limited period of time in order to allow her to make efforts to regain her former employability. Thereafter, Mr. CT Page 3522 Faraci will continue to have an obligation to support Mrs. Faraci until her death or remarriage, given the length of this marriage and his historically greater earning capacity, but at a much reduced rate.
The court believes that it is in the best interest of the parties' daughter for Mr. Faraci and she to continue to reside in the former family home until she reaches her majority. At that time the court believes that the property should be sold and finds Mr. Faraci's proposed disposition of the sale proceeds to be fair and equitable.
As indicated above, each party has her and his own pension benefit, although Mr. Faraci's is considerably more valuable than Mrs. Faraci's. Had the marriage endured, Mrs. Faraci would have had her share in Mr. Faraci's pension, both during his lifetime and after his death, if he predeceased her. Considering that her conduct represented the principal cause of the breakdown of the parties' marriage, however, the court believes that it is equitable to relegate each party to her and his own pension for their future benefits, particularly in view of the grant of lifetime alimony to Mrs. Faraci.
Given his several health problems, Mr. Faraci requests alimony, payable upon his total disability. In view of the length of the marriage and Mrs. Faraci's prior earning capacity, this is a reasonable request, appropriately limited to the circumstance of Mr. Faraci's inability to work at any employment.
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
 1. The marriage of the parties is hereby dissolved on grounds of irretrievable breakdown.
 2. As agreed between the parties at the time of trial, they shall have joint legal custody of their minor child with said child's primary residence being with the plaintiff and the defendant having reasonable, liberal and flexible rights of visitation. The CT Page 3523 parties shall confer with each other on all important matters pertaining to the health, welfare, education and upbringing of their child, with a view toward arriving at a harmonious policy calculated to promote the best interests of the child. The defendant shall have access to all educational and medical records and other information concerning the child, and the plaintiff shall execute any necessary authorization for such information to be released to the defendant.
 3. Based on her present earnings, the defendant shall pay child support to the plaintiff in the amount of $50 per week. The plaintiff shall claim the tax exemption for the minor child.
 4. The plaintiff shall continue to maintain medical insurance for the benefit of the minor child as long as it is provided through his employment. The parties shall equally divide all uninsured and unreimbursed medical and dental expenses incurred for the benefit of the minor child.
 5. Each party shall name the minor child as the primary, irrevocable beneficiary on all existing life insurance policies until she attains the age of 18 years.
 6. The plaintiff shall pay to the defendant as periodic alimony the sum of $100 per week for a period of five years. Thereafter, the plaintiff shall pay periodic alimony to the defendant in the amount of $1.00 per year until his death, her death or her remarriage.
 7. Pursuant to § 47-14g of the General Statutes, after the date of dissolution the parties shall own the premises at 76 Fox Road, Woodbury, Connecticut, as tenants in common. The plaintiff shall continue to have exclusive possession of the premises and shall pay and hold the defendant harmless from the outstanding joint obligation to the First Union Bank in the approximate amount of $31,500. The plaintiff shall also be responsible to pay and hold the defendant harmless from all other expenses of the home including taxes, insurance, utilities and routine maintenance. Neither party shall draw any further sums against said line of credit. The plaintiff shall be entitled to claim all CT Page 3524 interest and taxes paid on the home for federal and state tax purposes.
 Upon the occurrence of the first of the following events, the property shall be listed for sale with a mutually agreeable broker and upon mutually agreeable terms:
a. the 18th birthday of the minor child;
 b. the plaintiff's remarriage or cohabitation within said premises, as defined by § 46b-86 (b) of the General Statutes;
c. the death of the plaintiff;
d. the sale of the premises by mutual agreement.
 The net proceeds derived from such sale of the premises shall be divided equally between the parties. Net equity shall mean the sum remaining after deducting the following expenses from the gross sales price:
a. the then remaining balance to First Union Bank;
 b. any brokerage commissions, attorney's fees, customary closing costs including conveyance taxes, etc.;
 c. any bills for repairs or capital expenses which exceed $250. No such repair or capital expense shall be deducted from the gross sales price for purposes of figuring the net equity unless both parties had an opportunity to secure at their sole expense an estimate of any such cost or expense.
 8. Each party shall retain her and his respective pension.
 9. The Woodbury Telephone Company stock shall be the exclusive property of the defendant. The plaintiff shall execute any and all documents necessary to effect the transfer of said stock to the defendant solely.
CT Page 3525
 10. All of the plaintiff's interest in the Resort Camplands Timeshare is hereby transferred to the defendant, and the plaintiff shall execute all documents necessary to effect such transfer.
 11. Except as otherwise ordered herein, all of the assets shown on the parties' respective financial affidavits submitted at the time of trial, including bank accounts and motor vehicles, shall be hers or his without any claim by the other party. Likewise, all of the liabilities shown on those financial affidavits shall be the sole responsibility of the party on whose affidavit they appear, and she and he shall save the other party harmless from any liability thereon.
12. Each party shall pay her and his own counsel fees.
 13. The defendant shall pay to the plaintiff $1.00 per year as periodic alimony for so long as the plaintiff shall have an obligation to pay periodic alimony to the defendant. Said award shall be non-modifiable by the plaintiff except in the event the plaintiff is incapable of performing any substantially gainful employment because of a condition preventing his continued employment as certified by a medical doctor licensed by the State of Connecticut and found by a court of competent jurisdiction.
SHORTALL, J.