[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties were married on June 10, 1972; therefore, on the return date, March 21, 1995, they had been married for almost 23 years. They have two children who are issue of the marriage, a daughter who has reached her majority, and a son who is 12 years old. CT Page 7827
The plaintiff, Mr. Petersen, is 49 years old; Mrs. Petersen, 45. While neither party identified any present health problems, Mr. Petersen testified that he had been diagnosed with depression in the late 80's, and both parties have seen therapists and taken medication to assist them through this divorce. In addition, based on the court's observations of Mrs. Peterson during the trial of this matter, her present psychological and emotional condition can accurately be described as "fragile", and the court believes that her present condition is, at least in part, the result of the toll taken on her by her marriage and divorce.
Mr. Petersen works in computer operations at the Hartford Financial Services Group, where his salary for the past several years has been approximately $66,000.00. His weekly gross income from employment is $1,281.00 (not including a bonus of $2,700.00 he received earlier this year), with a net of $803.00 for purposes of computing his child support and alimony obligations. Although Mr. Petersen has experienced the adverse affects of "downsizing" three times in the past ten years, and he understandably feels insecure in his present employment, there was no evidence introduced that there is any real threat to his continued employment. Mrs. Petersen works part time, i.e., 25 hours per week, doing general office work, and her gross weekly income is $260.00; her net, $207.00. Mrs. Petersen may have an earning capacity considerably greater than her present employment. Her present employer testified that she is an "excellent" employee, and that full-time work could well be available to her in his West Hartford office, with a salary as high as $30,000.00 annually. Her ability to accept such employment is limited, however, by her son's attention deficit disorder and the need created by his condition for her to be at home with him after school in order to look after his medication and to assist him with his schoolwork.
The parties stipulated to a fair market value of the former family home of $157,500.00, and there is no outstanding indebtedness. The home is presently occupied by Mrs. Petersen and the parties' two children. Between them the parties have about $19,000.00 in the bank and approximately $21,000.00 in the cash surrender values of their life insurance policies. Mrs. Petersen has a small profit sharing plan through her employment, valued at approximately $8,000.00. Mr. Petersen, by virtue of over 20 years of employment with his present employer, has a "savings plan" with a value of approximately $227,000.00. In addition, he has a CT Page 7828 defined benefit pension plan valued at $84,000.00 assuming retirement at age 65, or $131,000.00, assuming retirement at age 50, his earliest retirement eligibility date. These assets constitute the major components of the parties' estate.
The court has considered all of the criteria of Sections46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated elsewhere in this memorandum. "This court is not obligated to make express findings on each of these statutory criteria."Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307,313-14 (1991).
Mr. and Mrs. Petersen agree that they are to have joint legal custody of their son, that he will continue to reside with Mrs. Petersen, and that Mr. Petersen will have reasonable visitation rights. This agreement will be reflected in the court's orders, with some additional stipulations concerning Mr. Petersen's consumption of alcohol and illegal drugs during the visitation as well as sleeping arrangements for his son. The court will also spell out some additional visitation for Mr. Petersen beyond what has been in effect and refer the parties to the Family Services Office for mediation over additional visitation.
At issue between the parties are Mr. Petersen's continuing duty to support Mrs. Petersen, a fair and equitable division of their assets and Mrs. Petersen's request for a contribution by Mr. Petersen to her counsel fees.
The court finds Mr. Petersen's weekly child support obligation to be $173.00, based upon his present salary without the bonus received in March 1997, since no evidence was introduced that this is a recurring event upon which Mr. Petersen can rely. The court will enter an order providing for Mrs. Petersen's participation in any future bonuses received by him. CT Page 7829
Mr. Petersen clearly has an earning capacity far superior to any which Mrs. Peterson might reasonably expect to attain, especially given her obligations in caring for their son. Except for the first few years of the marriage, he has been the principal provider of financial support and done a commendable job at that. Now that the marriage is being dissolved, the court believes that Mr. Petersen has a continuing duty to support Mrs. Petersen and, given the length of the marriage, that that duty should continue for her lifetime. The court also believes that, as far as possible and necessary, the parties' incomes should be equalized after such a long marriage. On the other hand, Mrs. Petersen's expenses include those incurred by her for the support of a child who has reached her majority. Moreover, the court believes that, after a few more years of intensive care for her son, Mrs. Petersen should be required to maximize the earning capacity which she does appear to have. Therefore, the court's orders will provide for higher payments of alimony for the next few years and a lesser amount thereafter.
As is usual in these cases, each party devoted a great deal of time and energy at trial to demonstrating that the other party was the principal cause of the breakdown of their marriage. In this court's view such a demonstration may legitimately affect the court's distribution of the assets accumulated during the marriage and may have a bearing on its allocation of the responsibility for counsel fees. Nevertheless, no court can truly appreciate what caused the breakdown of a marriage, especially one which had endured for almost 23 years at the time this action was brought.
It does seem clear that serious problems began as early as 1974, when the parties' first child was born. Matters deteriorated greatly in the late 80's and early 90's. It also seems clear that in the period 1993-95 Mrs. Petersen engaged in conduct that hastened the demise of the marriage[1]. It was Mr. Petersen's conduct, however, over the major portion of the life of the marriage that, in this court's opinion, was a far greater cause for its breakdown. His frequent drinking to the point of intoxication, his extreme displays of temper, his verbal and sometimes physical abuse of both Mrs. Petersen and their children, his frequent absences from the home to enrage in sports and other personal activities — these caused over a number of years an erosion of the mutual respect and affection needed to sustain the marriage. As required by statute, the court will take this factor into consideration in dividing the parties' assets and in CT Page 7830 awarding counsel fees.
As Mr. Petersen was the principal financial provider during the term of the marriage, Mrs. Petersen was the principal caretaker of their home and children. O'Neill v. O'Neill,13 Conn. App. 300 (1988), held that:
 a property division ought to accord value to those non-monetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment, which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities. Id., 311.
Mrs. Petersen's consistent presence in the home and her care of the parties' home and children advanced the career of Mr. Petersen and contributed to their accumulation of assets during the marriage. O'Neill was an early recognition that "housework" is, first of all, work. The spouse at home makes a substantial economic contribution to the family's assets as well as permitting the spouse working away from home to maximize his contributions. See K. Silbaugh, "Turning Labor Into Love: Housework and the Law," 91 Northwestern U.L. Rev. 1, 17-21, 57-58 (1996). For these reasons alone Mrs. Petersen would be entitled to an equal division of the assets accumulated by the parties through Mr. Petersen's work outside the home and Mrs. Petersen's work at home. Given Mr. Petersen's contributions to the breakdown of the marriage, her share should be greater. At the same time, the contributions by Mr. Petersen and through his family to the "acquisition, preservation (and) appreciation" of the parties' former family home have been very great indeed. The mortgage is entirely paid off due to a contribution by Mr. Petersen of $23,000.00 from his inheritance from his father as well as the parties' joint savings. In this court's view these unusually large direct contributions by Mr. Petersen will mitigate the reduction in his share of the assets that might otherwise be due, based upon his conduct causing the breakdown of the marriage. CT Page 7831
The court must also take into consideration the fact that Mr. Petersen withdrew from the parties' joint bank accounts $23,000.00 in February of 1995 when he began this action. Previously, in June 1994 he withdrew $15,000.00 and purchased United States Savings Bonds which he kept in his possession after this action was brought. Accordingly, $38,000.00 of the parties' marital assets were disposed of by Mr. Petersen, and all but $5,000.00 of them were used for his personal benefit. At the same time Mrs. Petersen disposed of a $4,000.00 income tax refund she received for 1996, which could reasonably be characterized as a marital asset in view of the fact that the parties had always filed jointly in the past. Had they filed jointly for 1996, a substantial refund would have been available to be shared between the parties. Thus, the court will order Mr. Petersen to pay to Mrs. Petersen fifty percent of the balance of the $38,000.00 he removed from the marital assets, after deduction of the $5,000.00 paid to or on behalf of Mrs. Petersen and Mr. Petersen's share ($2,100.00) of the income tax refund which Mrs. Petersen disposed of unilaterally.
Finally, from 1977 until June 1996 Mr. Petersen's name appeared on several bank accounts together with his mother. At one time these accounts totaled over $100,000.00. In June 1996 Mr. Petersen's mother removed his name from all of her accounts at his request. From these facts Mrs. Petersen argues that Mr. Petersen has a greater "opportunity . . . for future acquisition of capital assets and income", Section 46b-81, C.G.S., than Mrs. Petersen, and that she should receive a larger share of the present assets of the parties. The short response to this claim is that it is the very argument rejected by the Supreme Court inRubin v. Rubin, 204 Conn. 224, 230-31 (1987). Mr. Petersen's mother testified that all of the money in all of these accounts was her money, not Mr. Petersen s, and no evidence to the contrary was introduced. Therefore, any "interest" Mr. Petersen may have in these accounts is purely an expectancy and not divisible under the Connecticut property distribution statute.
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders: CT Page 7832
1. The marriage of the parties is hereby dissolved on the grounds of irretrievable breakdown.
2. The parties shall have joint legal custody of their minor child, whose principal residence shall be with the defendant. The plaintiff shall have reasonable, liberal and flexible visitation, including alternate weekends from Friday at 6:00 p. m. to Sunday at 7:00 p. m. and three weeks during the child's summer vacation, provided that the plaintiff shall give advance written notification to the defendant by May 1st of each year of his vacation visitation intentions. Additional visitation, including holidays and school vacations, shall be as agreed to between the parties. Should the parties fail to agree on an expanded schedule of visitation, they are ordered to mediate the issue of visitation with the Family Services Office of the Superior Court.
The plaintiff shall not consume any alcoholic beverages or illegal drugs during visitation or within 12 hours preceding visitation. The minor child shall have his own bed while sleeping at the plaintiff's residence, and that bed shall not be shared with any other adult person.
3. The plaintiff shall pay to the defendant as child support the sum of $173.00 weekly, pursuant to the child support guidelines. The defendant shall continue to provide comprehensive medical insurance for the minor child, and the parties shall share equally in unreimbursed and uninsured medical expenses, specifically including the cost of orthodontia their minor child.
4. For a period of three years from the date of dissolution the plaintiff shall pay the defendant as alimony the sum of $250.00 weekly. Thereafter, the plaintiff shall pay to the defendant as alimony the sum of $175.00 weekly until the death of either party or the remarriage of the defendant. Both the term and the amount of this award of periodic alimony shall be modifiable.
5. Within 30 days of his receipt of any bonuses or other payments from his employer in addition to his regular salary, the plaintiff shall transfer to the defendant one-half of the net payment received by him after deduction of federal and state taxes thereon.
6. The plaintiff shall cooperate fully in making available to the defendant any health insurance benefits available to her CT Page 7833 under COBRA legislation for the maximum period allowed. The cost of such benefits shall be paid by the defendant.
7. While the plaintiff has an obligation to pay alimony to the defendant, he shall name the defendant as the primary irrevocable beneficiary of life insurance in the amount of $100,000.00, and he shall name the parties' minor child as the secondary beneficiary until his obligation to pay child support has ended. If the plaintiff's obligation to pay alimony to the defendant ends prior to the child's reaching his 19th birthday, the child shall be named as the primary irrevocable beneficiary of the plaintiff's life insurance in an amount not to exceed $100,000.00. In the event that the plaintiff fails to meet this obligation, at the time of his death the defendant and the minor child shall have a priority claim against the assets of the plaintiff's estate. The plaintiff shall take no actions to encumber or otherwise reduce the face amount of life insurance provided for in this order. The plaintiff shall provide to the defendant annual proof of said insurance in a paid-up status, with the defendant and the minor child named as beneficiaries.
8. Pursuant to Section 47-14g, C.G.S., after this date the plaintiff and the defendant shall own the former family home at 268 South End Road, Plantsville, Connecticut, as tenants in common. The defendant shall have the exclusive use of those premises. At such time as the minor child attains the age of 19, or sooner at the defendant's election, the property shall be listed for sale and sold, and the parties shall share in the net proceeds of sale on an equal basis. Each party shall be responsible for payment of the capital gains tax, if any, attributable to her or his share of the proceeds. Until the house is sold, the defendant shall be solely responsible for payment of all taxes and for keeping the property fully insured. She shall also be responsible for payment of all repairs in the amount of $500.00 or less. The parties shall equally be responsible for any and all reasonable repairs the cost of which exceeds $500.00, and which are necessary to maintain and sell the marital home.
9. By way of further property distribution, 60 percent of the balance of the plaintiff's investment savings plan shall be transferred to the defendant by way of a qualified domestic relations order or other appropriate vehicle intended to minimize or eliminate tax liability for the parties. Each party shall be responsible for paying her or his own share of any tax liability which shall accrue. The court retains jurisdiction to approve any CT Page 7834 such qualified domestic relations order or other transfer vehicle.
10. Upon the retirement of the plaintiff or upon the defendant's election to begin receiving benefits at an earlier date on or after the plaintiff's earliest retirement age under his pension plan, the defendant shall receive a monthly benefit equal to 50 percent of the monthly benefit accrued by the plaintiff as of the date of dissolution. Said payment shall be made directly to the defendant by the pension plan for her lifetime. To the extent permitted by the plan the defendant shall be considered a surviving spouse for the purpose of receiving any survivor or death benefits in the event the plaintiff dies prior to or after his retirement, but only to the extent of her proportionate share as above. Counsel for the defendant shall prepare a qualified domestic relations order or other appropriate vehicle intended to minimize or eliminate tax liability for the parties in order to effect the court's order. The court retains jurisdiction for the purpose of approving said instrument or resolving any questions pertaining to its order.
11. As lump sum alimony the plaintiff shall pay to the defendant the sum of $15,500.00 within 90 days of the date of dissolution. This sum constitutes 50 percent of the remainder of the funds removed from the parties' joint accounts ($38,000.00) after deductions for the funds paid by the plaintiff to or on behalf of the defendant as counsel fees ($5,000.00) and the plaintiff's 50 percent share of the 1996 tax refund ($2,000.00). As additional lump sum alimony the plaintiff shall also pay to the defendant, within 90 days of the date of dissolution, one-half of the net bonus received by him in March of 1997 after deduction of federal and state taxes thereon.
12. Within 180 days from the date of dissolution the plaintiff shall pay to the defendant as a contribution to her counsel fees the sum of $12,000.
13. Each party shall be responsible for her and his liabilities as shown on the financial affidavits filed in connection with the trial of this matter and shall indemnify and hold the other party harmless from any liability thereon. Except as otherwise affected by these orders, each party shall retain all of the assets shown on his or her respective financial affidavit submitted at the time of trial. CT Page 7835
14. The defendant shall be exclusively entitled to all furniture, furnishings and personal property in the former family home except as otherwise agreed between the parties. In the event the parties are unable to agree on the distribution of these items of personal property, the matter is referred to the Family Services Office in accordance with Valenti v. Valenti,180 Conn. 521, 533 (1980). The court retains jurisdiction to resolve any issues concerning personal property.
Joseph M. Shortall, J.